Raymond P. Jepsen, Administrator of Estate of Francis Jepsen, Deceased, Appellee, v. Sprout and Davis and Daniel Wesley Murphy, Appellants.

Gen. No. 10,108.

450

Opinion filed February 14, 1947. Released for publication March 4, 1947.

GOWER, GRAY & GOWER, of Kankakee, for appellants.

FRANK J. BURNS and VERNON G. BUTZ, both of Kankakee, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Raymond P. Jepsen, as administrator of the estate of Francis Jepsen, deceased, filed a suit in the circuit court of Kankakee county against Sprout and Davis, a corporation, and Daniel Wesley Murphy. It is charged in the complaint that through the negligence of Daniel Wesley Murphy, in the management of a tractor trailer belonging to Sprout and Davis, that Francis Jepsen was killed. The complaint alleges that Wesley Murphy was the servant of Sprout and Davis, Inc., and was driving a tractor trailer, gasoline truck on the Dixie highway in a southerly direction in Iroquois county, Illinois; that the Dixie highway is a paved highway known as State Highway No. 1, and is paved a width of 22 feet, with shoulders about 8½ feet wide; that at the time of the accident complained of, the shoulders were in good condition for cars and trucks to be parked thereon; that about 8:45 p. m. on

May 12, 1945, the said Murphy parked his tractor trailer on the east side of said highway; that the tractor trailer was being driven from the east shoulder of the highway to the west side of the highway, and because of the negligence, carelessness and unlawful management and operation by Sprout and Davis, Inc., by its servant, Murphy, that a collision occurred between it and a car that Francis Jepsen was riding in, or in the alternative was driving.

The complaint charges the defendants with numerous violations of the statute in the manner the tractor trailer was handled, just before, and at the time the collision occurred, that caused the death of plaintiff's intestate.

The complaint charges that plaintiff's intestate, Francis Jepsen, was riding in, or in the alternative driving a Ford car in a northerly direction on the east side of said pavement on the Dixie highway and while in the exercise of due care and caution for his own safety, ran into the tractor trailer of the defendants, and was killed. The case was submitted to a jury for their verdict, who found the issues in favor of the plaintiff, and assessed the damages at $8,500. A motion for a new trial by the defendants, was overruled, and the court entered a judgment in favor of the plaintiff for the amount of the verdict, and assessed the costs of the suit against the defendants. It is from this judgment that an appeal has been perfected to this court.

The evidence shows that the defendant, Murphy, as the agent and servant of Sprout and Davis, Inc., was driving the tractor trailer in a southerly direction on the Dixie highway, in Iroquois county, Illinois. As he approached a crossroad, he drove the tractor trailer off of the paved highway onto the shoulder on the east side of the pavement. The defendants' exhibit No. 1, shows this to be a nearly level road for quite a distance of the intersecting road. The evidence further shows

that Murphy started to pull his tractor trailer over on the west side or south bound traffic lane of the highway, and that the tractor part of his outfit was facing nearly due south on the west side, or southbound lane of traffic, but the trailer part of the outfit entirely blocked the east side, or the northbound lane of traffic; that the headlights of the tractor were burning, but there is no evidence of any other lights on the tractor or trailer at the time the accident occurred.

The evidence further shows that Francis Jepsen was either driving, or riding in the car, and from the position that he and the other occupants were in after the accident, in all probability, he was the one that was driving the car at the time he met his death. August Anderson who lived about 120 rods east of Dixie highway on the crossroad heretofore mentioned, testified that he was driving towards the highway with the intention of turning north; that as he approached the highway, he saw three cars coming from the south or on his left; that all had lights, and in his best judgment, they were travelling at a rate of speed of 35 miles per hour, and were about 150 feet apart; that he was waiting until these cars passed before he would drive into the highway; that he stopped his car within 100 feet from the highway; that he did not see the tractor trailer until he heard a crash, and it turned out to be the Jepsen car that had run into the side of the tractor trailer outfit. He did not see any lights on the tractor trailer until after the accident, or know that it was there.

Mr. John Salmon testified that on the night of the accident, he was travelling in a northerly direction on Dixie highway following what proved to be the Jepsen car; that he had followed the same for several miles at the rate of speed of about 30 to 35 miles per hour, and to its rear by about 150 feet; that he could see

the lights of the Jepsen car were turned on; that the only lights that he saw on the tractor trailer, were the headlights that were facing a little to the southwest.

Mr. C. D. Jenkins, a State police officer, arrived at the scene of the accident between 8:30 and 9:00 o'clock. He described how the tractor and trailer were located across the road, and the position of the Ford car that ran under the trailer part of the truck. He stated that he had had a conversation with Daniel Murphy, the driver of the tractor trailer outfit, and in answer to a question of what Murphy said, he gave this answer. "He stated that he had parked the gas truck on the east side of the highway headed south due to a wider shoulder, and was proceeding across to his lane of traffic to proceed south on Route No. 1, to Wellington." Then the question was asked, "Did he say why he stopped, and parked at all?" Answer, "Well, as I recall the conversation whether or not he stated it to me, or whether or not I heard him make the statement to some one else, he stopped there to check his map to find out definitely where Wellington was, and whether or not he had gone too far south, or not far enough."

Mr. William May, a deputy sheriff, testified that he was called to the scene of the accident, and described the location of the tractor trailer practically the same as the other witnesses. In answer to the question, what Daniel Murphy said to him about the accident, he answered, "Well, I asked him what was the matter, and he told me that he came up to the gravel and I asked him if he was lost, and he said no, he wasn't lost." I said: "What are you doing on the east side?" He said: "I pulled over to that shoulder, it looked better." "I pulled over to check a map and change the gas tank."

It is insisted by the appellant that there is no proof of negligence on the part of the defendants, as charged in the complaint, which would constitute the proximate cause of the collision, and that it is imma-

terial whether defendants' truck rested legally, or illegally on the highway since it was a visible object which constituted a patent condition, and not a proximate cause of the accident. It is also argued by the appellant that there is no evidence as to whether the tractor trailer was moving, or standing still at the time of the collision. The undisputed evidence of Jenkins, the police officer, is that Murphy told him that he was proceeding across to his lane of traffic. Proceed means to go forward, to advance, so the jury would certainly believe from this testimony that at the time the accident occurred, the tractor trailer was moving forward. From reading the record in this case, it is our conclusion that the acts of Murphy, in handling this tractor trailer just preceding, and at the time of the accident, were of the grossest negligence, and showed a reckless disregard for the rights of others upon this much travelled Dixie highway.

It is also insisted that the deceased, Francis Jepsen, was guilty of contributory negligence, which was the proximate cause of his death. As before stated, the evidence shows that he was either driving, or riding in the automobile which was being driven in a northerly direction at a reasonable rate of speed; that the color of the trailer outfit was gray, and it was the time of the evening before it was real dark, and as the witnesses say, it was difficult to see an object on the road at this time. The lights from the tractor being on the right side of the highway, would also tend to confuse a driver coming from the south, as he would not reasonably suspect that the rest of the tractor trailer was blocking his lane of traffic, as he was proceeding in a northerly direction. We find no merit in the contention that the deceased was guilty of negligence that proximately contributed to the cause of his death.

It is claimed the verdict was against the weight of the evidence. The defendant offered no evidence to

contradict anything the plaintiff's witnesses said, and as before stated, we think the evidence clearly supports the plaintiff's contention that the deceased was in the exercise of due care and caution for his own safety, and the negligence of the defendant, Murphy, in handling the tractor trailer outfit, was the proximate cause of the death of Francis Jepsen.

Plaintiff's instruction No. 4, is as follows: "The Court instructs you that if you find from the preponderance of all the evidence that the plaintiff's intestate, Francis Jepsen, was driving said automobile, and was in the exercise of ordinary care and caution for his own personal safety and that of the automobile prior to and at the time of the occurrence in question, and if you further find that the defendant truck driver failed and neglected to keep and maintain a reasonable lookout for danger, or by using his faculties with ordinary care in looking out for danger could have avoided the collision and that he negligently failed to do so, and that such negligence on his part, if any, as shown by the evidence, was the proximate cause of the injury and subsequent death of the plaintiff's intestate, Francis Jepsen, then your verdict should be against the defendants and for the plaintiff."

It is claimed by the appellant that there is no evidence on which to base this instruction, and that Murphy may have been maintaining the best possible lookout, and for a reason beyond his control, he may not have been able to get his vehicle out of the way due to mechanical failure, or other reasons. There is no evidence whatsoever, in the record that there was any mechanical failure, or any other reason why Murphy could not get his outfit over in his lane of traffic before the deceased collided with it. Murphy told two witnesses how the accident occurred, and if there had been any mechanical failure of his vehicle, it seems strange that he did not tell one, or both of the officers of it. We think the instruction fairly states the law.

The fifth instruction given on behalf of the plaintiff is as follows: "The Court instructs you that it is not necessary for the plaintiff to prove by direct and positive evidence alone that the deceased, Francis Jepsen, was in the exercise of ordinary care and caution for his own safety at and before the time and place alleged in the complaint, but this may also be proved by circumstantial evidence, that is by proof of such facts and circumstances as give rise to a reasonable inference that he was in the exercise of due care, if the facts and circumstances proven are sufficient to raise such inference." The ninth instruction given on behalf of the plaintiff, with a few minor changes, is the same. It will be noted these instructions relate to the proof of the due care of the deceased, and that the same need not be proven by direct evidence, but may be by such facts and circumstances that give rise to a reasonable inference that he was in the exercise of such due care. It is insisted by the appellants that they were unduly prejudiced by the court giving these two instructions, as it overemphasized a vital point in the plaintiff's case. The cases cited by appellants, as sustaining their contention, did not pass on a case similar to the one presented to us, but criticizes the habit of a great many lawyers in repeating particular points that they wish presented in the instructions to the jury. Such practice has been frequently condemned, both by the Supreme and Appellate Courts. No doubt it was an oversight of the trial court, and the second instruction should not have been given, but a case should not be reversed because the court gave an erroneous instruction, if it is a harmless one. As we stated in *Kavanaugh v. Washburn,* 320 Ill. App. 250, "Modern tendency favors a liberal application of the harmless error doctrine to instructions when it appears the rights of the complaining party have in no way been prejudiced." This same doctrine was announced in *Reivitz v. Chicago Rapid Transit Co.,* 327 Ill. 207,

and *Palmer v. Miller,* 310 Ill. App. 582. It is our conclusion that it was error of the trial court to give this instruction, but it was harmless, because the jury acting as reasonable persons and considering the evidence in this case, could have arrived at no other verdict than which they did. We find no reversible error in the case, and the judgment should be, and is hereby affirmed.

*Judgment affirmed.*