**Carson A. Bunton, Appellant, v. Illinois Central Railroad Company, Appellee.**

**Gen. No. 47,108.**

First District, Third Division.

November 6, 1957.

Rehearing denied December 18, 1957.

Released for publication December 18, 1957.

James A. Dooley, of Chicago, for plaintiff-appellant.

Herbert J. Deany, Robert S. Kirby, and Lawrence Lawless, both of Chicago (Joseph H. Wright, of counsel) for appellee and cross-appellant.

JUDGE BRYANT delivered the opinion of the court.

This is an appeal from the Superior Court of Cook county. The cause was tried with judge and jury in that court and the jury returned a verdict in favor of plaintiff, Carson A. Bunton, and against the defendant, Illinois Central Railroad Company, a corporation, and fixed the damages at $45,000. On the post-trial motions the court set aside the verdict of the jury, entered a judgment non obstante veredicto in favor of the defendant, finding it not guilty, on the ground plaintiff as a matter of law was guilty of contributory negligence. The court also denied the defendant's motion for a new trial. The plaintiff appeals from the action of the court in entering the judgment non obstante veredicto, and the defendant enters a cross-appeal against the action of the court in denying its motion for a new trial in which it alleged, among other things, that the verdict of the jury was contrary to the manifest weight of the evidence; that the court erred in granting and in refusing certain instructions; that the court erred in refusing to allow the defendant to read the answers to certain interrogatories, and in al-

315

lowing the plaintiff to read the answers to certain interrogatories to the jury; that the court erred in refusing to allow the defendant to make certain comment in final argument; and that the damages fixed by the jury were excessive and a remittitur should be granted.

The incident from which this cause of action arose occurred on April 17, 1949, about 2 a. m., being an Easter Sunday morning, at the intersection of a certain public street or highway in the city of DuQuoin, Illinois, known as Park Street, and the railroad tracks of the defendant.

DuQuoin is a town on the main line of the defendant's railroad from Cairo to Chicago, Illinois, and is also a junction point where the branch line runs off to St. Louis. Defendant operates a railroad yard there for the purpose of making up freight trains. There are four places in the city of DuQuoin where the defendant's railroad tracks are intersected by the public streets and highways of the city of DuQuoin. From the south the first intersection, or crossing, is Franklin Street, the second intersection is Poplar Street, the third intersection is Main Street, and the fourth intersection is Park Street, where the incident occurred. There is no evidence of any protection in addition to the normal cross-arm, marked Railroad Crossing, which is maintained at the Franklin Street and Poplar Street crossings. Main Street crossing is the main street of the town and is also the route of Highway Number 51. That crossing is protected with gates and bells and flashers. In addition to the cross-arm protection at the Park Street intersection, in the daylight hours there is maintained a watchman, and when the watchman is not on duty a sign is placed there so indicating. All of these four intersections are at practically 90 degree angles, and the interval between intersections is approximately 500 feet, so that the distance between the Franklin Street intersection and the

316

Park Street intersection is somewhere between a quarter and a half a mile.

The Park Street intersection is an intersection with seven railroad tracks. They fall in two groups. Approaching them from the west, going east, the first track is a "siding" or house track, which serves, among other things, the Illinois Central freight house which adjoins the track to the west. The next two tracks are the two main-line tracks from Cairo to Chicago, the first one from the west being the south bound track and the second one being the north bound track. It is with the group of these three tracks that this incident is principally concerned. There is then a larger space in the crossing and then there are four tracks, one of which is a siding track, one of which is the St. Louis branch, and two of which are lead lines to the railroad yards immediately north of Park Street. The night in question was clear.

It is undisputed that once a person was standing on any one of the particular tracks, because of the level nature of the country and the straightness of the tracks, there would be a clear and uninterrupted view south along that track, except there was a dip in the tracks where the train went out of sight and the headlight again came into view before the gas plant crossing, which was a mile south.

The plaintiff was a pumper in a strip coal mine, operating pumps to keep the mine dry and workable. It was a job requiring vigor and strength. He had worked all day Saturday preceding the morning of the accident. His hours brought him home about 9:30 at night, where he and his wife had dinner. They then left together and went to a tavern in DuQuoin where the plaintiff had a glass of beer, and his father-in-law joined him and his wife and they went to a tavern on the outskirts of DuQuoin and the plaintiff there had a bottle of beer and the plaintiff's wife and the father-

317

in-law left shortly before he did, and he was driving alone. He testified that he drove down Walnut Street, a block and a half west of the railroad tracks and parallel therewith, to Park Street; that in the middle of the block, before he turned east into Park Street, he had trouble with the trunk of his car, which he fixed temporarily. It was a 1938 Chevrolet. As he turned onto Park Street he saw the caboose of a train going south.

The testimony and the exhibits introduced into evidence clearly indicate that by virtue of the brick buildings which were adjacent to the railroad tracks south of Main Street and by virtue of the railroad freight house and a poultry house adjacent to the tracks north of the railroad freight house and close to Park Street, there would not be a clear and uninterrupted view to the south from a point west of Chestnut Street, which was the street to the west of the railroad tracks, paralleling the tracks, and only a short distance from the railroad property. The plaintiff drove his car east on Park Street, crossed Chestnut Street and onto the railroad right-of-way. He stopped his car six or eight feet west of the most westerly track, which was the siding or house track. Admittedly he did not have a clear and uninterrupted view to the south at that point, because of the poultry house and because of the railroad freight house. The plaintiff testified that there were two box or poultry cars on the house track south of Park Street, and in that he is corroborated by two witnesses, and another occurrence witness said he did not know. Plaintiff testified that when he stopped his car he looked and listened, he saw nothing and he heard no whistle or sound which gave warning of an approaching train. In regard to the sound or warning he is corroborated by two witnesses —one standing on the station platform, who testified positively that the train did not blow its whistle or

318

ring its bell as it crossed the Franklin Street crossing, as it crossed the Poplar Street crossing, as it crossed the Main Street crossing, and that he heard a bang when it crossed the Park Street crossing; and the other witness, who was within a block of the place of the accident, who testified that he was out of his car and he heard nothing, and that he was in a position to have heard a whistle or a bell if they had been blown or rung.

Having stopped his car and looked and listened, the plaintiff testified—and no other person saw or testified to his conduct—that he drew forward slowly, at the rate of about ten miles an hour; that as he drew on the siding or house track he saw and heard nothing, and his view was obstructed to the south by the cars on that track; that as the front of his car drew out on the south bound track he looked to the north, from which direction trains on that track would come and in which direction lay the railroad's yards capable of obstructing the view, and then turned to look to the south, and that at that time he saw a flash of light for the first time and heard a whistle blown as the train from the south—north bound, hit him, and that after that he was unconscious. When the car was found, the exhibits introduced into evidence indicate that the front right-hand side of the car was struck by the train and thrown about 50 to 100 feet to the north.

The train was a passenger train (Number 4) from Cairo to Chicago, due through DuQuoin at 2:17 a. m., which was not a scheduled stop except to let off certain types of passengers. No one on the train among the entire crew knew that anything unusual had happened as the train passed through DuQuoin.

Evidence was introduced that the distance between the centers of each of the three tracks was 14 feet 9 inches; that the rails between each of the tracks was standard gage: that is, 4 feet 8 inches; that the dis-

319

tance between the center of the house track and the poultry shed, which was the first obstructing view west of the house track, was 9 feet. These figures, by computation, indicate that the distance that the car of the plaintiff would have to travel, allowing for the space from the front of his car to the seat of the driver, after the obstructions on the house track had been cleared, to the point of impact, was approximately 14 feet. The most favorable testimony to the plaintiff in regard to the speed of the train was that it was going approximately 80 miles a hour when it went through DuQuoin.

██ It is the law in Illinois that contributory negligence on the part of a plaintiff is a matter of fact for the jury to determine, and it becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. Thomas v. Buchanan, 357 Ill. 270, 277; Mueller v. Phelps, 252 Ill. 630, 634; Bales v. Pennsylvania R. Co., 347 Ill. App. 466, 473; Geraghty v. Burr Oak Lanes, Inc., 5 Ill.2d 153, 162. It is well settled that if there is any evidence which would support the finding of the jury, the verdict of the jury should not be disturbed and a judgment non obstante veredicto should not be entered. In considering these questions all the evidence tendered in support of the verdict must be considered in its most favorable intendments to the verdict. Any questions of disputed evidence or fact must be resolved in the most favorable manner in favor of the verdict. Walaite v. Chicago R. I. & P. Ry. Co., 376 Ill. 59, 61; Merlo v. Public Service Co., 381 Ill. 300, 311; Bales v. Penn. R. Co., 347 Ill. App. 466, 473; Farr v. C. & E. I. R. Co., 8 Ill.App.2d 168; Lindroth v. Walgreen Co., 407 Ill. 121, 130.

██ We are not prepared to say that all reasonable minds would agree that there was contributory negli-

320

gence on the part of plaintiff and that there was no evidence to support the verdict of the jury in that regard, and therefore the judgment non obstante veredicto is reversed.

We now come to the contention of the cross-appellant that the verdict of the jury should be set aside and a new trial granted on the ground that the verdict was contrary to the manifest weight of the evidence. This involves not only a factual question, but the application of one of those terms and definitions of law which gives law its proper plasticity. The right and duty of the Appellate Court to review the testimony and apply this test is statutory (Ill. Rev. Stats. 1955, chap. 110, sec. 92 (3) (b)), dating back over a century, and its constitutionality as a component part of the jury system, based on the historic right in jury trials in England to have their facts reviewed by the courts of review, has been upheld. Corcoran v. City of Chicago, 373 Ill. 567; Olson v. Chicago Transit Authority, 1 Ill.2d 83, 85.

The "weight of evidence" terms of the trial court— that is, "the greater weight of the evidence," or, "the preponderance of the evidence," or, "beyond a reasonable doubt," are terms of definite connotation, even to nonprofessional minds. In fact, the Supreme Court has said that it is not even proper to try to define to the jury, by instruction, the term "beyond a reasonable doubt"; that it means exactly what the words say. People v. Davis, 406 Ill. 215. However, the term contrary to the "manifest weight of the evidence" has no such definite connotation to the lay minds, and indeed its interpretation and application has caused serious contention between lawyers and between jurists.

In the minds of those who wish to uphold verdicts and who have or purport to have great confidence in the perceptiveness of jurors and in their ability for calm deliberation, the "manifest weight of the evi-

dence" has seemed to mean that the slightest evidence was all that was necessary to sustain a verdict, and therefore the jury's verdict should be disturbed only in the most unusual situations. On the other hand, to those who wish to upset the verdict of the jury and who have little confidence in the capacity of the common man to determine questions of fact, and who live in great fear of the showmanship and emotionalism of a trial court, "manifest weight of the evidence" has seemed to have been considered to be practically synonymous with the term "greater weight of the evidence," and to have given the Appellate Court the power to reweigh the evidence to such an extent that if it found that it did not agree with the jury it should substitute its opinion for the verdict of the jury and easily and frequently grant motions for a new trial based on the contention that the verdict was contrary to the manifest weight of the evidence. The proper administration of the rule and the interpretation of the meaning lie undoubtedly between those two extremes.

■ It is obvious that the test for determining whether the verdict is contrary to the manifest weight of the evidence is a different test than the test applied on a motion for a directed verdict at the end of all the evidence, or on a motion to enter a judgment non obstante veredicto in the post-trial motions. It is different because the evidence must be considered and weighed and because there must be at least a substantial amount of evidence to sustain the verdict. That difference has required a consideration of all the evidence in this case and the weighing and evaluating of the conflicting evidence. There is conflicting evidence as to whether there were box cars on the siding south of Park Street, as to the visibility of the train as it approached from the south, as to the ringing of the bell and the blowing of the whistle and as to the speed

of the train as it passed through DuQuoin. We bear in mind that the jury had the opportunity to see the witnesses on the stand and to judge their credibility better than any record would show it. The jury also had before it the interest of the plaintiff in considering his testimony; the interest of many of the witnesses for the defendant in that they are still employees of the defendant, and the positive testimony of certain disinterested witnesses in regard to some of the matters in which there is conflict of testimony.

 Because the Supreme Court does not have the power to review the finding of facts of this court unless a verdict has been directed and the facts have become a question of law, it normally has no occasion to pass upon the meaning or the application of the term "manifest weight of the evidence." This limitation on the court and its refusal to pass upon the question of the manifest weight of the evidence appears in the case of Petty v. Illinois Central R. R. Co., 11 Ill.2d 485.

The other districts of the Appellate Court of Illinois have discussed the meaning and application of the term "manifest weight of the evidence" in numerous cases. The Second District in Griggas v. Clauson, 6 Ill.App.2d 412, at page 419, said:

"The jury saw and heard the witnesses. Where disputed questions of fact are presented to a jury and the jury passes upon them, unless palpably erroneous, the finding of fact will not be disturbed by the reviewing court. (citing cases). It is not the province of the court to substitute its judgment for that of the triers of fact, where there is a conflict in the evidence. (citing cases). It is the province of the jury alone, to determine the weight of evidence and the credibility of witnesses. (case cited). To be against the 'manifest weight of the evidence' requires that an opposite conclusion be clearly evident." (citing cases.)

323

In the case of Borst v. Langsdale, 8 Ill.App.2d 88, at page 93, the same court spoke as follows:

"The jury saw and heard the witnesses. Where disputed questions of fact are presented to a jury and the jury passes upon them, unless palpably erroneous, the finding of fact will not be disturbed by the reviewing court. (citing cases). To be against the 'manifest weight of the evidence' requires that an opposite conclusion be clearly evident." (citing cases.)

In Thomas v. Smith, 11 Ill.App.2d 310, at page 318, the Third District spoke as follows:

"It is not the province of this court to disturb the verdicts of juries on questions of fact, unless clearly and palpably erroneous. This rule has been so well established that it is not necessary to cite authorities."

And in the Fourth District in Olin Industries, Inc. v. Wuellner, 1 Ill.App.2d 267, the court passed upon the question of manifest weight of the evidence as follows (p. 271):

"The mere fact that there is some contradiction in the evidence would not justify this court in reaching a different conclusion than that of the trier of fact. Becherer v. Belleville-St. Louis Coach Co., 322 Ill. App. 37, 42. To be against the 'manifest weight of the evidence' requires that an opposite conclusion be clearly evident. Schneiderman v. Interstate Transit Lines, 331 Ill. App. 143, 147."

These decisions of the other courts in Illinois are indeed persuasive as precedents. We have considered all the evidence in this case and we do not feel that the verdict here was contrary to the manifest weight of the evidence by any of these tests.

 Defendant next contends that the trial court erred in permitting plaintiff's counsel to read to the jury certain of defendant's answers to interrogatories which gave the date and place of the collision and some

324

facts concerning the physical layout of the site of the collision. Most, if not all, of these matters had been admitted in the opening statement of counsel for the defendant. As the interrogatories, therefore, did not constitute in themselves either admissions or impeachment, it was argued that the reading of the answers, being repetitious, was prejudicial to the defendant. We are of the opinion that repetition was not of such a prejudicial nature as to be reversible error.

██ The defendant next contends that the court erred in refusing to allow the defendant's counsel to read into the record the answer to an interrogatory relating to the number of times the plaintiff had crossed the Park Street tracks of the defendant railroad. In the answer to the interrogatory plaintiff had said that he had crossed the Park Street crossing at least twice each working day for 21 years. In the various examinations or cross-examinations of the plaintiff, he had given various answers as to just how he had crossed the railroad tracks of the defendant. Whether he had used the Park Street crossing or the Main Street crossing or, occasionally, the Poplar Street crossing, was brought out. It was clearly evident from all the testimony that plaintiff was completely familiar with all of the crossings of the public streets and the railroad tracks of the defendant in DuQuoin. He had lived there a great number of years. The railroad ran through the center of the town. He had lived on one side of the tracks and worked on the other. The real evidential question at issue, of course, was his familiarity with the situation. The trial court held that the answer to the particular interrogatory was not impeaching and refused to allow the specific answer to that interrogatory to be read to the jury. Largely for the reason that the plaintiff never denied his complete familiarity over a large number of years with the crossing on Park Street and

the other crossings in DuQuoin, and that although the language given in the answer to the interrogatory may have slightly differed from the story which he told on direct and cross-examination as to the specific use of the tracks and the crossings, it was not impeaching but really corroborative of his familiarity with the tracks and with the crossing on Park Street, and the court did not commit reversible error in its ruling in regard to the exclusion of the answer to that interrogatory.

Defendant also objected because the court refused to allow it to read into the record an answer of the plaintiff to an interrogatory, which gave the names and addresses of all the witnesses to the accident in his possession or under his control, and listed four, and only three of them were called to testify. This, the defendant argues, deprived it of the right of commenting upon the failure of plaintiff to call the fourth witness. The rule cited by the defendant is, that the failure of a litigant to call a witness within the control of such litigant is a proper subject of comment. In re Estate of Sandusky, 321 Ill. App. 1. But the court distinguished between the failure to call witnesses which were listed by the plaintiff, as in the instant case, and those which were actually under his control.

So in the instant case, where the interrogatory asked the plaintiff for the names and addresses of witnesses to the accident which were "in your possession or under your control," it is quite evident that the phrase "under your control" had reference to the names and addresses of the witnesses as distinguished from the witnesses themselves. And this, in part, was the tenor of the plaintiff's objection on the trial, when in reference to the fourth witness who was not called upon by plaintiff to testify his counsel said: "That witness is no more under our control than theirs. They could have subpoenaed the witness the same as we. I don't

326

think the fact that we are required to list the people we know that have some knowledge of the occurrence . . . should . . . put the plaintiff in the position that he has . . . an obligation to call them." We are of the opinion that the court properly sustained plaintiff's objection in this regard.

The defendant has assigned as error the action of the trial court in regard to instructions. First, that certain instructions tendered by the plaintiff were erroneously given, and secondly, that the court erred in refusing to give certain other instructions tendered by the defendant. We have considered the instructions specified by the defendant, and in addition thereto have considered the entire instructions given by the court to the jury.

■■■ We have considered particularly plaintiff's instruction No. 4, which was given by the court after it had apparently been agreed in consideration of the instructions that the plaintiff would withdraw the instruction and that it would not be given. The court found this instruction among the instructions that he had decided to give, and inadvertently read it.

It is noted first that the general tenor of the instruction—that is, that the jurors are entitled to use their observation and experience in passing upon the evidence, is similar to the defendant's instruction No. 3, which was also given.

However, the objection raised by the defendant to the instruction was not as to its general tenor, but first to the fact that it referred to "any material fact," and secondly, to the peremptory nature of the instruction. In regard to the use of the words "any material fact," it is noted that plaintiff's instructions Nos. 1, 1a and 1b, which were given, set forth in detail the charges of the complaint and the answer of the defendant thereto, and that defendant's instruction No. 8 properly instructs the jury as to what the plaintiff

must prove if he is to recover. It is obvious that in the absence of the two instructions last referred to, or other instructions like them, the giving of the instruction embodying the words "any material fact" might very well tend to confuse the jury, but with the use of those words in connection with instructions clearly outlining the issues involved and what was necessary to be proved, the serious error in the use of those words is mitigated if not entirely dispersed. Schneiderman v. Interstate Transit Lines, 401 Ill. 172, 176 et seq.

There remains the further question relating to the rule that whenever a peremptory instruction is given it should contain all of the elements upon which a verdict is requested. In the case of Duffy v. Cortesi, 2 Ill.2d 511, where a peremptory instruction was given which did not contain all the facts within itself upon which a verdict could be directed, the court held that it was improper. In that case, however, the harmful instruction assumed facts which were not in evidence and incorrectly interpreted the law, and in passing upon the effect of that instruction the Supreme Court noted that the Appellate Court had recognized that the instruction was erroneous but had felt that the jury could not have been misled by it, and the Supreme Court, in view of the other defects in the instruction, held that the peremptory instruction might have misled the jury and found that it was therefore reversible error. It is our opinion that the instruction in the instant case was not subject to the same objections as the instruction passed upon in Duffy v. Cortesi, in that it correctly stated the law, was based upon no facts not in evidence and was made complete and whole when taken in connection with the other instructions given. We cannot look with favor upon the giving of such instruction, by inadvertence or otherwise. However, we do not find that in this situation the rights of the defendant were so prejudiced

that the giving of plaintiff's instruction No. 4 should be held to be reversible error. We think we are bound by the modern rule as set forth in Jepsen v. Sprout & Davis, 330 Ill. App. 448, 456, as follows:

"No doubt it was an oversight of the trial court, and the second instruction should not have been given, but a case should not be reversed because the court gave an erroneous instruction, if it is a harmless one. As we stated in Kavanaugh v. Washburn, 320 Ill. App. 250, 'Modern tendency favors a liberal application of the harmless error doctrine to instructions when it appears the rights of the complaining party have in no way been prejudiced.' This same doctrine was announced in Reivitz v. Chicago Rapid Transit Co., 327 Ill. 207, and Palmer v. Miller, 310 Ill. App. 582."

We have considered the three instructions tendered by the defendant. We believe that the giving of the instructions in their submitted forms would under the facts in this case tend to confuse the jurors and that the jury was properly instructed on all the law involved, and that the court was correct in its rulings thereon. We do not believe that the rulings of the court controvert the modern trend—the now well judicially established principle, as set forth in Duffy v. Cortesi, 2 Ill.2d 511, 515–516 as follows:

"The trend of judicial opinion reveals a reluctance to reverse cases on the ground of technical errors in instructions; hence, courts have reiterated that the instructions will be considered as a whole, and where the jury has not been misled, and the complaining party's rights have not been prejudiced by minor irregularities, such errors will not be deemed grounds for reversal. (Kavanaugh v. Washburn, 320 Ill. App. 250; Stephens v. Weigel, 336 Ill. App. 36; Anderson v. Brown, 340 Ill. App. 613.)"

That has been the rule since Ritzman v. The People, 110 Ill. 362 where the court stated:

■■■■■■■■■■■■■■■■■■■■■■■■■

"It is sufficient when the instructions, considered as a whole, substantially present the law of the case fairly to the jury. That, we think, has been done in this case."

The defendant has cited as error the rulings of the court made in the argument of the case before the jury. It has claimed that certain remarks of the plaintiff's attorney were improper comment on the evidence, and the trial court overruled the objection, and that the defendant's attorney was improperly restrained in that he was denied the right by the trial court to comment to the jury on the fact that the plaintiff brought his suit in Cook county. We are of the opinion that the rulings of the trial court in both of these matters were correct.

■■ ■■ The defendant urged as an additional reason for setting aside the denial by the trial court to grant a new trial, that the damages fixed by the jury in its verdict were excessive and were speculative and conjectural. In this connection it is noted that the instructions of the court in regard to damages properly enumerated the elements of damage: that is, the nature and extent of the physical injuries, the physical disability of the plaintiff resulting from such injuries, physical pain and suffering sustained as a result of the injuries, out-of-pocket expense for medical and hospital services, and the loss of earnings; and, that the plaintiff's counsel in final argument commented on each of those elements and that the verdict of the jury corresponded nearly exactly with the suggested compensation itemized by the plaintiff's counsel. It is also noted that the testimony covers all of those elements. Without considering the objective conditions which were evidence of shock when plaintiff was admitted to the hospital, it is clear that after that time it was discovered that he had a hemothorax and a pneumothorax of the right chest, and he had frac-

330

tures of ten ribs—four on the left side and six on the right side. He also had a comminuted fracture of the right iliac crest, a fracture of the right radius involving a joint, a compression fracture of the upper border of the third lumbar vertebra and a fracture of the fifth lumbar at the pars interarticularis, an anterior-superior fracture of the fourth lumba vertebra, and that as a result of these injuries he had a chronic pleuritis arising from the injury and a 50 per cent loss of the pronation in his right wrist; that he had a spurring of the third and fourth lumbar vertebrae, and that later a permanent spondylolisthesis of the fifth lumbar vertebra was discovered. There was evidence also showing that he was in pain, had been in pain and that the pain might be permanent. At the time of the trial he wore a lumbo-sacral support. It is evident that this testimony all went to the nature of the plaintiff's physical injuries, his physical disability resulting from the injuries and the pain which he suffered as a result of the injuries. There was also evidence in regard to the hospital and doctor bills which he had incurred by virtue of the injuries, and evidence in regard to his loss of time while he was in the hospital and when he resumed work on a part-time basis. In the case of Eizerman v. Behn, 9 Ill.App.2d 263, at page 289, this court said:

"We have repeatedly held that damages awarded to a plaintiff in a personal injury case will not be set aside unless so palpably excessive as to indicate passion or prejudice on the part of the jury." (citing numerous cases.)

It is evident that the assessment of damages by the jury here was not contrary to the principle laid down above. This court in discussing the problem further (Smith v. Illinois Cent. R. Co., 343 Ill. App. 593, 612), said:

331

"The question of excessiveness is not to be determined by what we as judges think the damages should have been. The question is whether reasonable men might differ in their answers to the question. We cannot say that reasonable men would not differ on the question whether $185,000 was too great an amount to allow plaintiff who was so badly injured, in consideration of his wages at the time of the accident and his probable earnings during his expectancy; of the pain and suffering he has undergone and will undergo; of the deprivation of the privileges and enjoyments common to men in like circumstances . . . and his medical expenses and the probable expenses of attending him in the future. Because we think reasonable men might differ on this question, we cannot say that the jury was moved by passion."

 We therefore feel that the damages fixed by the jury in this case do not require the granting of defendant's motion for a new trial. The judgment non obstante veredicto will be reversed, the denial of the motion for a new trial will be affirmed and the cause will be remanded to the trial court with directions to reinstate the judgment for plaintiff on the verdict heretofore entered.

Affirmed in part, reversed in part and remanded with directions.

BURKE, P. J. and FRIEND, J., concur.