THOMAS MCINERNEY, Plaintiff-Appellant, *v.* HASBROOK CONSTRUCTION COMPANY, Defendant-Appellee and Separate Appellant—(UNIVERSAL PAINTING CONTRACTORS, INC., Third-Party Defendant and Separate Appellee.)

(No. 56352;

First District (4th Division)—November 14, 1973.

*Rehearing denied January 23, 1974.*

DIERINGER, J., concurring in part and dissenting in part.

Horwitz, Anesi, Ozmon & Associates, Ltd. of Chicago (Nat P. Ozmon and Dario A. Garibaldi, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michel A. Coccia, and Michael P. Connelly, of counsel), for separate appellant.

John T. Kennedy, of Querry, Harrow, Gulanick & Kennedy, of Chicago, for separate appellee.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

The plaintiff, Thomas McInerney, is a painter. He brought this action against the Hasbrook Construction Company (Hasbrook), a general contractor, on the grounds of a wilful violation of the Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, par. 60 *et seq.*) and negligence to recover damages for injuries sustained when the ladder upon which he was working fell. Hasbrook filed a third-party action against Universal Painting Contractors, Inc. (Universal), the painting subcontractor and plaintiff's employer, on the grounds of a contract of indemnity and the active conduct of Universal as opposed to the passive conduct of Hasbrook.

The trial court directed a verdict in favor of Hasbrook on the negligence count (Count II) of the plaintiff's complaint and a verdict in favor of Universal on the contractual indemnification count of the third-party complaint.

The jury returned a verdict for the plaintiff on the Structural Work Act count and assessed his damages at $80,000. It also returned a verdict in favor of Hasbrook and against Universal on the active-passive count of the third-party complaint.

Initially, the trial court entered judgment on both verdicts. However, after hearing argument on the post-trial motions of Hasbrook and Uni-

versal it entered judgments notwithstanding the verdict in favor of Hasbrook on the Structural Work Act count of the complaint and in favor of Universal on the active-passive count of the third-party complaint. As an alternative to its order granting the judgments *n.o.v.* it entered an order granting both Hasbrook and Universal new trials and further ordered that Universal was entitled to a new trial even if Hasbrook were not.

The plaintiff appeals from the order granting judgment *n.o.v.* in favor of Hasbrook and from the alternative order granting Hasbrook a new trial. Hasbrook appeals from the judgment *n.o.v.* in favor of Universal, from the alternative order granting Universal a new trial, from the order declaring that Universal is entitled to a new trial even if Hasbrook is not, and from an order denying Hasbrook's motion for a new trial on the contractual indemnity count of the third-party complaint.

The facts may be summarized as follows: Hasbrook is in the business of building single family residences. In 1961 it was engaged in the development and promotion of a residential subdivision known as Plum Grove Countryside in Rolling Meadows, Illinois. Its sales method was first to construct model homes and then to induce a prospective purchaser to contract for the construction of a home substantially similar to one of the models. It employed no skilled tradesmen or laborers of its own and made it a practice to subcontract the actual construction. Universal was the painting subcontractor for all of the homes that were built in connection with this development.

The plaintiff was employed by Universal as a painter. On January 2, 1964, he was engaged in touching up the paint on a newly completed home. He set up his extension ladder on a driveway which was covered with mud, dirt and construction debris, ascended to the top and began to paint. As he did so, the ladder fell on to the driveway and he was severely injured.

The plaintiff states the issues raised by his appeal as whether the trial court properly entered judgment *n.o.v.* in favor of Hasbrook and whether the trial court properly granted Hasbrook's motion for a new trial. We direct our attention first to whether the court acted properly in granting the motion for a new trial.

■■ In its order granting Hasbrook's motion for a new trial, the court concluded that the jury's verdict was against the manifest weight of the evidence. It is now well established that for a verdict to be against the manifest weight of the evidence the contents of the record must be such that an opposite conclusion is clearly evident. (See *Bunton v. Illinois Central R.R.* (1957), 15 Ill.App.2d 311, 146 N.E.2d 205, and cases cited therein.) Therefore, the question presented to this court is whether

the evidence adduced by the plaintiff is such that a finding in favor of Hasbrook is clearly evident. In considering this question it must be borne in mind that the facts are to be construed in the light most favorable to the verdict. *Klatt v. Commonwealth Edison Co.* (1965), 33 Ill.2d 481, 211 N.E.2d 720.

In the present case the plaintiff's action was brought under the provisions of the Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, par. 60 *et seq.*). Therefore it was incumbent upon him to prove that Hasbrook had "charge of" the painting, that the ladder upon which he was working was not erected in a safe, suitable and proper manner or not placed so as to give adequate protection to his life and limb, that Hasbrook's failure to comply with the provisions of the Act was wilful and that the improper erection or placement of the ladder caused his injuries. (Ill. Rev. Stat. 1969, ch. 48, pars. 60, 69.)

The record contains a considerable amount of evidence relating to whether Hasbrook had "charge of" the painting. The agreement between Hasbrook and Universal provided in part that the painting work would be performed in a good and workmanlike manner in accordance with specifications furnished by Hasbrook, that work would be done according to assignments issued by Hasbrook's production manager and that the work on each residence would be commenced according to a schedule issued by Hasbrook. Included among the general conditions were that Universal would follow the production sequence set forth by Hasbrook, that all materials used were first to be approved by Hasbrook, that Hasbrook was to be allowed access to the job site for the purpose of inspection and that Hasbrook had the right from time to time to alter, increase or diminish the work to be done.

Albert Riley, Hasbrook's president testified that when a home was completed the owner and Hasbrook's superintendent would make an inspection using a checklist developed by Hasbrook in order to identify work that was deficient. On the basis of the completed checklist Hasbrook's foreman would instruct the various building trades as to what would have to be done in order to render the building complete and ready for occupancy. In the case of paint touchup work, Hasbrook's superintendent would instruct Univerasl as to the work required.

Riley also testified that during construction Hasbrook was concerned with whether the painting work was performed in a workmanlike manner and whether it was done in time to meet the owner's requirements. With respect to each unit Hasbrook would negotiate with Universal as to the price of the job and the work to be done. This included identifying which surfaces were to receive which kinds and colors of paint.

Compliance with specifications was insured by Hasbrook's superintendent on the job who directed the subcontractors in their work.

Lester Stone, a painter employed by Universal, testified that he was Universal's foreman in the Plum Grove area on the day of the accident. At that time Hasbrook's superintendent had the task of enforcing the painting schedule and checking the quality of the work. If something needed to be done he would speak to Stone, and Stone would speak to the individual painters. Hasbrook's superintendent was on the job daily, and Stone would see him between two and six times each day.

The plaintiff testified that on the morning of January 2 his job was to do touch-up work on a particular residence. He set up his equipment and waited while Hasbrook's superintendent took his foreman around and showed him which boards had to be touched up.

██ In our view, the foregoing is sufficient to raise a question whether Hasbrook had "charge of" the work being performed by the plaintiff. It is true that it did not supervise the actual erection of the ladder used by the plaintiff or dictate the precise manner in which he was to accomplish his work, but liability under the Structural Work Act is not limited to such a narrowly described class of persons. See *Larson v. Commonwealth Edison Co.* (1965), 33 Ill.2d 316, 211 N.E.2d 247; *Gannon v. Chicago, Minneapolis, St. Paul & Pacific Ry.* (1961), 22 Ill.2d 305, 175 N.E.2d 785.

As stated in *Larson*:

> ' "To have charge of" does not necessarily imply more than to care for or to have the care of.' Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge', they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute. Rather, consistent with its beneficial purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure." 33 Ill.2d at 322, 211 N.E.2d at 251.

Therefore, we believe that the jury's conclusion that Hasbrook was "in charge" of the work as that phrase has been interpreted by our courts

is supported by the record, and we cannot say that the opposite conclusion is clearly evident.

It is also our conclusion that the record is sufficient for the jury to have found that Hasbrook's wilful violation of the Act was the proximate cause of the plaintiff's injuries. The Act imposes liability when a ladder is not placed and operated so as to provide adequate protection to the life and limb of any person who may be engaged upon it. (Ill. Rev. Stat. 1969, ch. 48, par. 60.) In the present case the evidence established that during the course of the touch-up work the plaintiff was required to set his ladder on a driveway which had a surface composed of mud and dirt and which was covered with debris such as lumber, paper, bricks and shingles. The ladder was not braced or equipped with "safety shoes", and no one was assigned to steady it. When the plaintiff ascended, the bottom of the ladder slipped away from the building and caused the top to slide down the wall, breaking a window as it did so. Thus the jury would have been justified in finding, as apparently it did, that the ladder fell either because it was improperly placed or because it was improperly equipped.

■■ The evidence also established that Hasbrook's superintendent was on the job every day and in fact had been present at the location where the plaintiff was working on the morning of January 2. It is now well established that "wilful" within the context of the Structural Work Act is tantamount to "knowing" (*Miller v. DeWitt* (1967), 37 Ill.2d 273, 226 N.E.2d 630; *Doherty v. National Casting Division, Midland-Ross Corp.* (1972), 6 Ill.App.3d 329, 285 N.E.2d 537) and that the failure to place properly a scaffold or support may form the basis of an action brought under the Act. (See *Louis v. Barenfanger* (1968), 39 Ill.2d 445, 236 N.E.2d 724.) Thus it was for the jury to determine whether Hasbrook should have been aware of the unsafe conditions and taken steps to correct them.

■■ For the reasons stated above we conclude that the verdict was not contrary to the manifest weight of the evidence and hence that it was error for the court to have granted Hasbrook's motion for a new trial. From this it follows that it was also error for the court to have entered a judgment *n.o.v.* in favor of Hasbrook. (See *Pedrick v. Peoria & Eastern Railroad* (1967), 37 Ill.2d 494, 229 N.E.2d 504.) Both the judgment *n.o.v.* in favor of Hasbrook and the order granting Hasbrook a new trial are reversed.

Hasbrook states the issues raised by its appeal as whether the trial court erred in entering judgment *n.o.v.* in favor of Universal on the active-passive count of the third party complaint, whether the court erred in entering its alternative order granting Universal a new trial and

whether the court erred in directing a verdict in favor of Universal on the contractual indemnity count of the third party complaint.

■■ We direct our attention first to whether the court erred in entering judgment *n.o.v.* in favor of Universal. In situations where a party is charged with a violation of the Structural Work Act, it may seek contribution on the basis that its violation was passive whereas another was guilty of an active violation. (*Sleck v. Butler Bros.* (1964), 53 Ill.App.2d 7, 202 N.E.2d 64.) However, one who presents a claim on an active-passive theory cannot succeed if its misconduct is of the same degree or character as that of the party from whom the contribution is sought. *Scully v. Otis Elevator Co.* (1971), 2 Ill.App.3d 185, 275 N.E.2d 905.

■■ In the present case we are unable to distiguish between the misconduct of Hasbrook and that of Universal. The jury correctly found that Hasbrook was "in charge" of the work within the meaning of the Act. Therefore it would appear that both it and Universal were guilty of an act of omission in that each failed to insure that the ladder utilized by McInerney was properly placed and/or properly equipped with safety devices to prevent it from falling. In addition, the jury could have found that the ladder fell because of the debris covering the driveway. If such were the case, the primary and active fault would have been on the part of Hasbrook. Based upon these observations it is our conclusion that the judgment *n.o.v.* in favor of Universal was properly granted, and it will be affirmed. Having so concluded we need not consider the propriety of the alternative order granting Universal a new trial.

■■ Finally we consider whether the trial court erred in directing a verdict in favor of Universal on the contractual indemnity count of the third party complaint. Indemnity is granted only in those cases where the agreement is clear and explicit. (*Halperin v. Darling & Co.* (1967), 80 Ill.App.2d 353; 225 N.E.2d 92). An indemnity contract is to be construed strictly against the indemnitee. If it purports to be the complete agreement, the courts will not add to it any other term about which it is silent. (*Marshall Field & Co. v. J. B. Noelle Co.* (1967), 81 Ill.App.2d 409, 226 N.E.2d 454.) The agreement between Hasbrook and Universal dated June 2, 1961, obligated Universal to furnish the labor and materials necessary to paint the units specified therein. These units were identified specifically as models number 2500, 2600, 2800 and 2900. Thus by its express terms the agreement did not purport to include model 3600 the model upon which the plaintiff was working at the time of his fall.

■■ At trial, Hasbrook sought to introduce into evidence certain invoices prepared by Universal for work done on model 3600 homes. Ap-

parently this was an attempt to demonstrate that the agreement had been expanded through usage to include models other than those specifically stated. We believe that the trial court was correct in excluding these, and we are in accord with the finding that the indemnity provisions of the agreement did not extend to the unit upon which the plaintiff was employed. For this reason the directed verdict in favor of Universal on the contractual indemnity count of the third party complaint is affirmed.

Affirmed in part and reversed in part.

ADESKO, J., concurs.

Mr. JUSTICE DIERINGER concurring in part and dissenting in part:

I concur with the majority opinion in reversing the judgment notwithstanding the verdict in favor of the plaintiff, Thomas McInerney, and against Hasbrook Construction Company, and in reinstating the judgment for the plaintiff. I also agree with the majority that the written contract of indemnity between Hasbrook and Universal Painting Contractors, Inc., brought by way of a third party action, does not include the house model No. 3600, where the plaintiff was working.

However, I respectfully dissent to the majority's holding affirming the trial court's judgment notwithstanding the verdict on the active-passive count of the third party complaint, wherein the jury found in favor of Hasbrook and against Universal. I think the question of active-passive was a question of fact for the jury to determine, as we said in *Lambert v. D. J. Velo & Co.* (1971), 131 Ill.App.2d 30, wherein we followed the ruling of the Supreme Court of Illinois in *Miller v. DeWitt* (1967), 37 Ill.2d 273.

I would reverse the trial court and reinstate the judgment in favor of Hasbrook and against Universal.