**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation, Plaintiff,**

v.

**Nathan ROSENMUTTER and Charles Rosenmutter, Defendants.**

No. 84 C 5434.

United States District Court, N.D. Illinois, E.D.

July 24, 1985.

---

Neal R. Novak, McNeela & Griffin, Ltd., Chicago, Ill., for plaintiff.

Paula K. Jacobi, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

Fidelity and Deposit Company of Maryland ("Fidelity") brings this action against Nathan Rosenmutter and Charles Rosenmutter ("the Rosenmutters"), seeking entry of a judgment declaring that Fidelity is entitled to receive collateral from defendants in the amount of $50,000 to secure its surety bond and awarding Fidelity $11,-140.71 in costs and attorneys' fees. Before the Court is plaintiff's motion for summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.

For the reasons stated below, plaintiff's motion for summary judgment is granted in part and denied in part. The remainder of plaintiff's complaint is dismissed without prejudice.

## I. FACTS

' Summary judgment is appropriate under Rule 56 "only if pleadings, depositions and affidavits fail to disclose a genuine issue of material fact." *Gracyalny v. Westinghouse Electric Co.*, 723 F.2d 1311, 1316 (7th Cir.1983). In deciding the motion, the Court "must resolve all doubts against the party seeking summary judgment." *Id.* Under this standard, the following facts are assumed to be true for purposes of this motion.

Fidelity is a Maryland corporation with its principal place of business in Baltimore. The Rosenmutters are residents and citizens of Illinois. Federal jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

General Iron Industries, Inc. ("General Iron") and Chimet Corporation, two entities not parties to this action, were approved self-insureds under the Illinois Workers' Compensation Act, Ill.Rev.Stat. ch. 48, § 138.1 *et seq.* (1983). As a condition of obtaining self-insured status, the Illinois Industrial Commission ("the Commission") required the companies to post a $50,000 surety bond. The bond, secured by a letter of credit for the full amount, was executed by Fidelity on October 1, 1977. The Workers' Compensation Act states that the purpose of such a bond is to guarantee payment by the employer of any compensation awards made pursuant to the Act. Ill.Rev. Stat. ch. 48, § 138.4(a)(2) (1983).

The penal sum of the surety bond was subsequently increased to $100,000 and then, on August 21, 1981, to $200,000. The defendants, acting as indemnitors, signed and accepted both riders increasing the amount of the surety bond. As an inducement to Fidelity to execute the surety bond, the defendants, acting in their individual capacities, executed and delivered to Fidelity an Application for Miscellaneous Bonds containing an indemnity agreement

between the parties. Additionally, General Iron arranged for a letter of credit in the amount of $150,000 to be issued by Main Bank of Chicago as collateral for the $200,000 surety bond.

In February 1982, General Iron filed for reorganization under Chapter 11 of the Federal Bankruptcy Code, 11 U.S.C. § 1101 et seq. Thereafter, it failed to pay a worker's compensation claim, approved by the Commission, in the amount of $25,000. The injured General Iron employee then filed suit demanding that Fidelity disburse the amount of the claim from the bond proceeds. *Calvin v. Fidelity & Deposit Company of Maryland*, 82 C 2016 (N.D.Ill. Nov. 2, 1982). The Commission, intervening as a defendant in that suit, requested that Fidelity not make payment on the Calvin claim or on any other claim until the total amount of outstanding and potential claims against General Iron and Chimet Corporation could be ascertained. Potential claimants could file claims until March of 1985.[1]

Presently, there are 33 claims pending against General Iron. Four claims totaling $34,913 have been adjudicated. Of these, one claim for $25,000 has been settled and approved by the Commission. Three other claims totaling $9,913 have been settled but not yet approved. Fidelity estimates its ultimate liability on the bond to exceed the $150,000 secured amount and seeks summary judgment in the amount of $50,000 as collateral for the unsecured portion of the bond.

Fidelity also contends it is owed by defendants costs and attorneys' fees in the amount of $11,140.71. Fidelity alleges that it incurred these expenses in defending the Calvin suit and enforcing the indemnity agreement at issue in this lawsuit.

## II. DISCUSSION

### A. *The Indemnity Agreement*

The controversy between the two parties centers upon the indemnity agreement contained in paragraph two of the Application for Miscellaneous Bonds. It reads as follows:

> The undersigned do hereby represent that the statements made herein as an inducement to the Fidelity & Deposit Company of Maryland, its successors and assigns, (hereinafter called Company) to execute the bond applied for herein, are true, and, should the Company execute said bond, do hereby agree as follows:
>
> \*      \*      \*      \*      \*      \*
>
> SECOND, to indemnify the Company against all loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefor, which the Company may sustain or incur by reason of executing said bond, in making any investigation on account thereof, in prosecuting or defending any action which may be brought in connection therewith, and obtaining a release therefrom, and in enforcing any of the agreements in any of the paragraphs herein contained. *Payment of any such amounts shall be made to the Company by the undersigned as soon as the Company shall be liable therefor, whether or not it shall have paid out any portion thereof.* (emphasis added)

Specifically, this Court is being asked to interpret the term "liable" under the terms of the agreement.

Fidelity asserts that its liability under the agreement has accrued because claims estimated to be valued in excess of the $200,000 bond limit have been filed. Fidelity's interpretation of the accrual of liability would require the Rosenmutters to indemnify Fidelity by providing the remaining $50,000 collateral required under the Collateral Agreement.

The Rosenmutters, however, contend that Fidelity's liability under the agreement

---

**1.** The Self Insurance Program in Illinois was terminated on March 10, 1982. Coverage under Fidelity's bond was terminated concurrently. Pursuant to Ill.Rev.Stat. ch. 48 § 138.6, potential claimants had three years, or until March 10, 1985, in which to file claims under Fidelity's bond.

accrues only after claims have been adjudicated and the exact amount of Fidelity's liability is fixed. The Rosenmutters' interpretation of the accrual of liability would require them to post additional collateral only after adjudicated claims for which Fidelity is liable have exceeded the $150,000 collateral already posted. Since adjudicated claims, under this interpretation, currently total only $34,913, the Rosenmutters would not now be required to post additional collateral.

■ In Illinois, indemnity contracts or provisions are to be strictly construed against the indemnitee. *McInerney v. Hasbrook Const. Co.*, 16 Ill.App.3d 464, 306 N.E.2d 619 (1973), *modified on appeal*, 62 Ill.2d 93, 338 N.E.2d 868 (1975). This is especially true where, as in this case, the indemnity provision is contained within the indemnitee's form. *Gay v. S.N. Nielsen Co.*, 18 Ill.App.2d 368, 152 N.E.2d 468 (1958).

■ It is a settled principle of Illinois law that a surety, after a debt has become due, may, without making payment himself, compel the principal to pay the debt. *Moore v. Topliff*, 107 Ill. 241, 249 (1883); *Western Casualty v. Biggs*, 217 F.2d 163 (7th Cir.1954). The liability of an indemnitor, however, does not arise until it has been definitely ascertained that loss or damage has been sustained. *City of Chicago v. Siebert*, 244 Ill.App. 83, 87 (1927); *Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1165, 1169 (7th Cir.1969). Accordingly, in this case, Fidelity is "liable" at this time only for worker compensation claims in which there has been an ascertained amount of damages. While it seems likely, based on the 33 claims presently pending against General Iron, that Fidelity's ultimate liability will exceed the 150,000 secured amount, only four claims totaling $34,913 have accrued to date. In fact, only one claim has been approved by the Commission (Rubin Calvin's claim of $25,000). Three other claims totaling $9,913 have been settled but have not yet been approved by the Commission. These four claims total $34,913.

Fidelity cites *Safeco Insurance Co. of America v. Schwab*, 739 F.2d 431 (9th Cir. 1984), in support of its position that the Rosenmutters, as indemnitors, must post additional collateral on the basis of estimates of future liability rather than on fixed liability. The *Safeco* holding, however, interpreted an indemnity agreement that required the indemnitors to pay the surety, upon demand,

> [a]n amount sufficient to discharge *any claim* made against Surety [Safeco] on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against any loss on any Bond.

*Id.* at 432 (emphasis added). The indemnity agreement signed by the Rosenmutters is easily distinguished from that in the *Safeco* case in that it provides only that the Rosenmutters pay "any such amounts ... to [Fidelity] ... as soon as [Fidelity] *shall be liable* therefor, whether or not it shall have paid out any portion thereof" (emphasis added). The agreement does not require payment of amounts sufficient to discharge unadjudicated or anticipated claims. Fidelity is entitled to indemnification when its liability is fixed and certain "whether or not it shall have paid out any portion thereof."

■ Fidelity further relies upon *Milwaukie Construction Co. v. Glens Falls Insurance Co.*, 367 F.2d 964 (9th Cir.1966), for its claim that it is entitled to exoneration from the anticipated $50,000 unsecured portion of the bond. Consistent with the Court's interpretation of the indemnity agreement, however, Fidelity's invocation of the doctrine of exoneration as a basis for obtaining additional collateral is premature. "A surety cannot invoke the doctrine of exoneration unless his liability is imminent and absolute." *Falvey v. Foreman—State National Bank*, 101 F.2d 409, 417 (7th Cir.1939). Fidelity's liability under the bond is neither imminent nor absolute. Therefore, the doctrine of exoneration is inapplicable at this time.

Accordingly, Fidelity presently is "liable" under the indemnity agreement in the

amount of $34,913.[2] Since that amount is less than $150,000, Fidelity is not entitled to additional collateral from the Rosenmutters at this time. To the extent plaintiff seeks summary judgment on that issue, the motion is denied.

### B. *Attorneys' Fees and Costs*

Fidelity asserts that it is entitled to receive $11,140.71 in attorneys' fees and costs incurred to date. This total represents $7,713.21 in attorneys' fees and costs incurred defending the Calvin suit, $657.50 in unspecified attorneys' fees and $2,770 in attorneys' fees and costs incurred in bringing this action.

■ Paragraph two of the Application for Miscellaneous Bonds permits Fidelity to recover costs and attorneys' fees "which the Company [Fidelity] may sustain or incur by reason of executing said bond ... and in enforcing any of the agreements in any of the paragraphs herein contained." Under this provision, Fidelity is clearly entitled to the $7,713.21 it requests for defending the Calvin suit. These expenses have been incurred by Fidelity, and the Rosenmutters are liable for them. Attorneys' fees and costs are separate from and additional to the amount of the surety bond which represents the total amount designated to pay workers' compensation claims. Therefore, the defendant's liability of $7,713.21 is due and plaintiff is entitled to judgment in that amount.

Fidelity's request for the remaining $3,427.50, however, is denied. The $657.50 it requests is not clearly explained in that the Court is unable to ascertain whether the costs and fees were incurred as part of the Calvin defense or as part of the current action. Therefore, summary judgment will be denied as to those fees without prejudicing plaintiff's right to file an affidavit within 30 days establishing that the $657.50, or

a part thereof, was incurred in defense of one of the four claims.

The $2,770 amount which Fidelity requests is based on expenses incurred in bringing this action. This action, however, was unnecessary to enforce the contract since this lawsuit was premature. Accordingly, each party must bear its own expenses and fees on this suit.

### III. CONCLUSION

This motion for summary judgment is granted in part and denied in part. Plaintiff's motion for summary judgment is granted in the amount of $7,713.21. Plaintiff is given leave to file an affidavit within 30 days justifying additional fees up to $657.50. In all other respects, plaintiff's motion is denied. The remainder of the complaint is dismissed without prejudice.

IT IS SO ORDERED.

---

**2.** Judge McGarr wrote in the *Calvin* case in his Memorandum Opinion dated November 2, 1982, at p. 7: "The defendant-surety [Fidelity] is clearly liable for the entire $200,000 amount of the bond." *Calvin v. Fidelity & Deposit Company of Maryland,* 82 C 2016 (N.D.Ill., Nov. 2, 1982). That statement was not a finding of fact. Judge

McGarr made the statement in his ruling on a Motion to Intervene brought by the Illinois Industrial Commission. The issue before the court was the Commission's intervention and not the adjudication of workers' compensation claims.