Stanley Larson, Plaintiff-Appellant, v. Commonwealth
Edison Company, et al., Defendants-Appellees.

Gen. No. 49,117.

First District, First Division.

April 6, 1964.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Harold W. Huff and James L. Tuohy, of counsel), for appellant.

Harry I. Parsons, of Chicago (Norton Wasserman and Charles D. Snewind, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a Scaffold Act case, in which plaintiff was seriously injured in a fall from a scaffold erected by and for the use of plaintiff's employer, Paschen Contractors, Inc., in the course of a general rehabilitation and remodeling project of a plant of defendant Commonwealth Edison Company. Plaintiff appeals from a directed verdict and judgment in favor of defendant

Sargent & Lundy, consulting engineers, and from a jury verdict and judgment in favor of defendant Edison. He appeals upon the theory that the directed verdict was improper, and that trial errors and an erroneous instruction invalidate the jury verdict.

The controlling facts are not controverted. The project rehabilitation was commenced by Edison on November 1, 1955. The plan under which the rehabilitation was to proceed was prepared by Sargent & Lundy, a partnership firm of consulting engineers, and the major portion of all the contracts was prepared by them. They were "designers only" and had no authority with regard to the actual construction work. Edison let all of the contracts, and six of their employees were on the job at all times to inspect the progress of the work. A representative of Edison's Safety Department made regular visits to the construction site "for the safety of the operating personnel in the station and not of the construction project," and "he had no authority to enforce any suggestions" as to contractors' employees. There were about 75 to 80 contracts with a large number of contractors, and each had a specific function or job to accomplish in connection with the rehabilitation. Two or three of these contracts were with Paschen.

The plant consisted of a number of buildings and occupied an area of at least three city blocks. The work involved clearing out the buildings entirely, leaving only the outside walls. It was accomplished in piecemeal fashion, so that old turbines were kept running while new generating turbines were being installed. The work was divided into "units," and we are concerned with operations in and about Units 7 and 8. Prior to the demolition of Unit 8, turbines were installed in Unit 7, and as the work moved from Unit 7 to Unit 8, a temporary barricade or partition (16 feet high) was erected between the two units.

The contract between Edison and Paschen consisted of a purchase order from Edison to Paschen to "furnish all labor, materials, tools and equipment required to install preliminary structural work for Unit #8, Crawford Station, as directed by the Station Construction Department, and in accordance with drawings to be issued by Sargent & Lundy. . . . General Conditions, Exhibit 'C' dated 7/1/53, are a part of this purchase order."

The "General Conditions, Exhibit 'C'" were prepared by Sargent & Lundy and include the following:

"9. Safety of the Work. The Contractor agrees to carry on the Work in a proper, safe, and secure manner with the utmost care so as to prevent loss, injury, or damage to the Owner's property or the property on the Premises and/or surrounding property, and so as to prevent danger to the lives or persons of individuals and, if in the opinion of the Engineers the Work is not being so carried on, they may order the Work stopped immediately and not resumed until, in their opinion, proper means and methods have been adopted by the Contractor to insure the carrying on of the Work so as to prevent such threatened loss, injury, damage, or danger. The Owner reserves the right, however, to order the Work stopped whenever the Work interferes or threatens to interfere with the operation of the Owner's equipment until such interference is eliminated. All equipment used on the Premises shall be in first class condition and any equipment which, in the opinion of the Owner or the Engineers, shall be considered inadequate or unsafe, shall be removed at the expense of the Contractor. The Contractor shall provide and maintain all passageways, guard fences, lights, and other facilities for protection required by the Public Authorities or rendered reasonably necessary

by local conditions, also all barricades for the Work at all times, also for all openings during construction as required by any Public Authority, and shall erect proper shelters wherever necessary so as to properly protect the Work from damage. All barricades shall be so arranged as to insure the safety of the workmen and passersby and shall be kept painted with red paint. The Contractor shall plank over openings instead of providing barricades around openings where, in the Owner's opinion or the opinion of the Engineers, the progress of the Work will be benefited. All safety barricades and planking shall be installed to the satisfaction of the Engineers. The Contractor agrees that all Work shall comply with the provisions of Clause 8 preceding and with the decisions of building inspectors and other Public Authorities having jurisdiction over the health and safety of employes, and particularly with an Act of Legislature of the State of Illinois entitled 'An Act providing for the protection and safety of persons in and about the construction, repairing, alteration, or removal of buildings, bridges, viaducts and other structures and to provide for the enforcement thereof' approved June 3, 1907, and in force July 1, 1907, and any amendments thereto. This Clause shall not be construed as implying any responsibility on the part of the Owner or the Engineers with regard to securing the safety of the work."

Paschen contracted with Edison to construct the partition between Units 7 and 8 on a "cost-plus" basis. To aid in building the partition, scaffolds were erected by the Paschen employees, and it was from one of these that plaintiff fell on August 7, 1958. The use of this type of scaffolding was regulated by rules promulgated by the Industrial Commission of the State of

Illinois pursuant to the mandate of the Health and Safety Act. These rules require the wall brackets be secured to the wall by bolts:

No bolts were provided for the scaffold from which plaintiff fell, nor for any of the scaffolds previously erected by Paschen in the course of the work. These scaffolds were fastened with spikes, and as the scaffolds were moved from place to place, the brackets were pulled off and renailed to the new position. The scaffold in question was erected by nailing an upright to the partition wall and attaching a bracket. Planks were placed across this bracket to form the scaffold. When plaintiff reached the scaffold and stood upon it, the bracket pulled away from the wall and broke, and the end of the scaffold upon which he was standing fell, and plaintiff was injured.

Plaintiff charges each of these defendants with a violation of the Structural Work Act (Ill Rev Stats 1957, c 48, §§ 60–69 inclusive). Each defendant contends that the provisions of the act were inapplicable because each denies being "in charge of the work."

■■ Initially, we agree that it was "proper" for plaintiff to undertake to prove that both Commonwealth and Sargent & Lundy had an obligation under the statute. In Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785 (1961), the court stated (p 322):

> "Any employee or other person injured by a wilful violation of the act by any of the enumerated persons having charge of the structural work still has an action against such party. This is a very real remedy, when we consider that structural work frequently involves the operations of several contractors or subcontractors who are each in charge of a phase of the work, and the injured person has a right of action against any

354

one of them, other than his employer, who may wilfully violate or fail to comply with the act."

▇ Plaintiff contends that the directed verdict in favor of Sargent & Lundy was improper, and that "the court erroneously quashed the subpoena which demanded the production" of the contract between Edison and Sargent & Lundy. Plaintiff sought the production of this contract "to determine what agreement had been made between them pertaining to the supervision of the work and the distribution of responsibility," and argues that it was evidence in the possession of Sargent & Lundy and it "was relevant to the question of who was in charge of the work," and "by quashing the subpoena the court made it impossible for plaintiff to present the evidence."

The quashed subpoena is not part of the record on appeal. From the record, it appears that during the trial a subpoena duces tecum was served upon Robert Roe, auditor and accountant of Sargent & Lundy, at 1:35 p. m. on September 11, 1962, "commanding him to appear here at the hour of 2:00 p. m., of the same date, in this court room and to produce at that time any and all records, plans, account records, approval sheets, contracts, cost sheets, proposals, progress reports construction and alteration—Units 7 and 8, on the barrier wall . . . ." The motion to quash was made because "it is too general and broad in its scope and constitutes nothing but a fishing expedition on the part of the plaintiff . . . ," and because the case had been pending since 1959 and "no discovery procedures were followed at any time by the plaintiff in regard to Sargent & Lundy employees or records."

In a discussion between court and counsel, plaintiff expressed a willingness to delay the production of the records until later in the trial. The court ruled "that Sargent & Lundy were the consulting engineers on the

355

job and weren't actively engaged in any supervisory work. I don't see why they should be required to produce those records . . . I mean you are going fishing. . . . it is on the basis, I think you are trying to get something not germane to the issues involved. If it was a question of time, we could extend the time."

We think the subpoena was untimely and unreasonable in its scope. As noted, this case has been pending since 1959, and the amended complaint filed August 8, 1960, includes the defendant "A. Kolflat doing business as 'Sargent and Lundy' a partnership." During the intervening two years before trial, plaintiff failed to use Rule 17 of the Illinois Supreme Court Rules. This rule provided plaintiff with the means of inspecting and copying specified documents "relating to the merits of the matter in litigation," in the possession of any defendant, which plaintiff deemed "relevant to the case against Sargent & Lundy." Also, we fail to find anything in the record which occurred during the trial to warrant "a broad catch-all demand for the production of 'all' documents of several vague categories." We find no abuse of discretion here.

■ Plaintiff further asserts that Sargent & Lundy clearly participated in the work, and "their employee Shapiro was in regular attendance at meetings on the job site." This contention rests upon the testimony of the superintendent for Paschen Contractors that "there was a job meeting, I believe it was once a week or once every other week where all of the contractors and the Commonwealth Edison people attended and usually there was one man from Sargent & Lundy's at the meetings. Those meetings were held weekly or biweekly. . . . The representative of Sargent & Lundy's who attended these meetings was generally a Mr. Shapiro. At these meetings Mr. Shapiro did not at any time give me directions as to how I was to perform the construction phase of the work. . . . I never talked

356

to Sargent & Lundy's people. . . . They were not supervising on the job." We find nothing in the record which affirmatively shows that Sargent & Lundy did more than prepare the plans, specifications and contracts. Therefore, we conclude the trial court properly directed a verdict in their favor.

■ ■ As to the jury verdict in favor of Edison, both parties agree the decisive question is the propriety of the following instruction given to the jury over the general objection of plaintiff:

"The Court instructs the jury that the plaintiff is not entitled to recover damages under the provisions of the Structural Work Act unless he has proven by a preponderance, or greater weight of the evidence, that the defendant, Commonwealth Edison Company, had charge of the work by retaining control and supervision of such work being performed by Paschen Contractors, Inc."

Several other instructions were given at the request of plaintiff, which referred to the Structural Work Act. One informed the jury that "contributory negligence of the plaintiff shall neither bar a recovery nor reduce the amount of plaintiff's damages." Another instruction set forth in detail the pertinent provisions of the Act, including "any owner . . . having charge of . . . ." This instruction further stated:

"The jury are further instructed that if they find from the evidence that the defendant was in charge of any of the work coming within the provisions of said statute, it was the duty of the defendant to comply with the provisions of the statute . . . ."

Plaintiff has made three specific objections to the questioned instruction: (1) the words "supervision and control" are not required words under the Act;

357

(2) the words "such work being performed by Paschen" unduly limit the Act; and (3) the instruction is peremptory and not complete.

As noted by plaintiff, the controverted instruction is not IPI and apparently has not been given in any reported case. However, comparable statutes in other jurisdictions do not use the phrase "in charge of," although the intent is evidently similar, as in the case of Kuntz v. Del E. Webb Construction Co., 18 Cal Rptr 527, 368 P2d 127 (1961), where it is said:

> "The provisions of the Labor Code *should not be construed* as meaning that, where a general contractor or owner of premises does nothing more with respect to the work done by an independent contractor than exercise *general supervision and control* to bring about its satisfactory completion, it is his responsibility to assure compliance with all applicable safety provisions . . . ." (Emphasis supplied.)

We believe our examination of this point should begin with the Gannon case, which involved the rebuilding of a freight dock on defendant's premises. After an extensive review of the many cases which have interpreted the Scaffold Act since it was enacted in 1907, the court said (p 323):

> "It is undisputed that the engineering and architectural plans for the work were prepared by the office of the chief architect of the defendant railroad, and that he and other personnel made frequent inspections of the construction project, spending as much as five hours a day on the premises on occasions. It is not clear from the evidence just how detailed those inspections were. It is also undisputed that the bricklaying, assembling and construction of scaffolds, and the placement

358

of ladders were performed by the employees of the Marhoefer Company, and under their supervision. Under these circumstances, it was at most a disputed question of fact whether the owner could be deemed to be in charge of the construction within the meaning of the act, and it would be the province of the jury, under proper instructions, to make that determination."

However, except for the general language of the opinion, nothing specific is said in that case as to what might be considered "proper instructions."

In the instant case, plaintiff's instruction on section 9 of the Act used the terms "having charge of" and "in charge" without any definition or interpretation of the terms. Defendant's instruction used the term "had charge of" and additional language which would aid the jury in applying the statutory language to the evidence presented on the ultimate issue before them.

In determining the propriety of the use of the words "supervision and control," we find a number of cases interpreting the Scaffold Act which use these terms. In Claffy v. Chicago Dock & Canal Co., 249 Ill 210, 94 NE 551 (1911), although not directly interpreting the term "in charge of," the court said (p 222):

"... under the facts in this case the owner never parted with the *control and supervision* of the building ...." (Emphasis supplied.)

In Taber v. Defenbaugh, 9 Ill App2d 169, 174, 132 NE2d 454 (1956), the court refused to impose liability on the defendant owner under section 9, because it was not shown that the defendant was actually in charge of construction, or "an actual interference by the defendant with decedent's control or supervision of the construction," and that "any conclusion reached from the evidence that defendant assumed supervisory

359

control over all the operations required in the construction of the house would amount to extending the meaning of the words 'supervision' and 'control' far beyond their accepted meaning." In the Appellate Court Gannon case, 25 Ill App2d 272, 167 NE2d 5 (1960), the court said (p 279):

> "Thus the decision in the Kennerly case was predicated on a significantly different status on the part of the owner; there was no occasion for the court to interpret the statutory requirement that the owner have charge since the evidence conclusively showed that it retained control and actually supervised the work."

In Miller v. B. F. Goodrich Co., 295 F2d 667 (7th Cir 1961), at page 669, it is said:

> "There is an abundance of evidence in this record to show that defendant was in control and supervision of the plaintiff and the . . . painting crew."

We believe these cases show that the terms "supervision and control" are used interchangeably with "in charge of," and we are not persuaded that the use of these terms misconstrues the statute or would unduly confuse a jury. We are aware that it is not a recommended practice in this state to convert language of judicial decisions into instructions (Bartosh v. Ryan, 344 Ill App 214, 219, 100 NE2d 330 (1951)), but under the circumstances, where plaintiff tendered no substitute instructions, and there is no IPI instruction in the area, we cannot say that there was reversible error in this aspect of the instruction. A modification of the language of a statute by the courts may be reflected by the instructions. DeLegge v. Karlsen, 17 Ill App2d 69, 149 NE2d 491 (1958).

Considering plaintiff's objection to the use of the phrase "such work being performed by Paschen" as limiting the liberal interpretation of the statute, we believe the reference to the work of Paschen does not violate the spirit of the Act on a rehabilitation project covering three years and including numerous contractors. (Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 322, 175 NE2d 785.) We do not believe the jury was misled or confused here.

 Finally, plaintiff contends that the instruction is peremptory, and that to have any validity at all, it must be complete in itself. We agree. (Duffy v. Cortesi, 2 Ill2d 511, 119 NE2d 241 (1954).) However, we believe the instruction is complete because it contains "all the facts which will authorize the verdict directed." (Hanson v. Trust Co. of Chicago, 380 Ill 194, 197, 43 NE2d 931 (1942); Ratner v. Chicago City R. Co., 233 Ill 169, 174, 84 NE 201 (1908).) It contains all the elements necessary to sustain a verdict for defendant Edison. It does not assume facts not in evidence, and there is no incorrect interpretation of the law as we see it.

In conclusion, although it cannot be said that the giving of this instruction is proper in all Scaffold Act cases, we find no error in its use here. It did not, as argued by plaintiff, "curtail" the statement of the duty of Edison and did not "place upon the plaintiff a duty of proof which plaintiff did not have."

 On the question of control, plaintiff also contends the court erred in refusing to admit evidence to show that Edison was "in control of" when they directed the use of a different type of scaffolding after the occurrence. This, they argue, would show that defendant was in control. As to this, defendant replies "there must first be evidence that the change was made, and second, there must be evidence that the

361

change was actually directed by the party alleged to be in control," and asserts that there was never any offer of proof that "the change was made." Therefore, proof of the secondary element would have served only to confuse the jury, as the record does not contain any evidence that a change in scaffolding had been made after the occurrence. We find no error here.

Further arguing on this point, plaintiff contends that "where a cause of action arises from a statute which requires that a safe or suitable item of equipment be provided it is permissible to show the existence of other types of equipment which are more suitable." Defendant, conceding that this may be the rule, asserts that "no such proof was here offered that a more suitable scaffold was later used." We find nothing in the record to the contrary.

Finding no reversible error in this record, we conclude that the directed verdict and judgment for defendant Sargent & Lundy and the jury verdict and judgment for defendant Edison should be affirmed.

Affirmed.

KLUCZYNSKI, J., concurs.

BURMAN, J., dissenting:

In the case at bar plaintiff was totally and permanently disabled as a result of a fall from a scaffold used in the remodeling of a structure owned by Commonwealth Edison. The fall resulted from a failure to fasten the brackets on the scaffold with bolts in direct violation of the Structural Work Act. Edison claimed it was not in charge of the work and therefore not responsible in damages to the plaintiff.

Edison as the owner of premises located at 3501 South Pulaski Road entered into an extensive rehabilitation project of its plant which consisted of a number

of buildings covering an area of at least three city blocks. Edison let out between 75 and 80 contracts to a large number of contractors. Not more than 2 or 3 of these contracts was with Paschen contractors. The work was divided into units and this case is concerned with operations in and about Units 7 and 8. All the scaffold construction on these units were done by workmen employed by Paschen. Since I feel that the facts of Edison's participations have been fully set out in the opinion of the majority I shall not repeat them.

The plaintiff principally contends that the jury reached its verdict exculpating the defendant, Commonwealth Edison, as a result of an erroneous peremptory instruction given over plaintiff's objection. The instruction was as follows:

> The Court instructs the jury that the plaintiff is not entitled to recover damages under the provisions of the Structural Work Act unless he has proven by a preponderance, or greater weight of the evidence, that the defendant, Commonwealth Edison Company, had charge of the work by retaining control and supervision of such work being performed by Paschen Contractors, Inc.

Plaintiff contends that this instruction misstates the applicable law and places upon the plaintiff a burden of proof not sanctioned by the most conservative reading of the Act nor by the opinions of the courts of our State. I agree and it is upon this ground that I feel compelled to register my dissent.

The pertinent part of the Structural Work Act, Ill Rev Stats c 48, §§ 60–69 with which we are concerned provides as follows:

> § 69—Any owner, contractor, sub-contractor, foreman or other person, having charge of the erection, construction, repairing, alteration, removal,

363

or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof . . .

The purpose of instructions in relation to statutory language is an attempt by the trial court to make clear the cold and rather forbidding exterior which statutory pronouncements may present to the layman. The instruction, however, should not modify the plain language of the enactment.

In this case Edison was exercising daily active participation in conjunction with Paschen and a jury under proper instructions could find that Edison was, in fact, "in charge of the work." The jurors' right to reach such a decision was, however, withdrawn from them by the giving of the instruction here appealed from. The trial judge not only limited the right of the plaintiff to recover damages from Edison to proof that Edison was "in charge" of the work, but also injected a requirement that plaintiff must prove by a preponderance of the evidence *that Edison retained control and supervision of such work being performed by Paschen Contractors, Inc.* Thus Edison was exculpated because the evidence did not show (1) it retained control, and (2) it retained supervision of the work performed by the contractor. The statute, and the case decisions interpreting the statute, indicate, I believe, that an owner need not be engaged in both of these activities to be liable. To add these requirements as a test of liability is to deprive the plaintiff of his rights of recovery under the Act.

We do not have a passive or absent owner here, nor a defendant making casual inspections. A reading of the statute indicates that it was the intention of the General Assembly to hold an owner liable as also being in charge of the project if he is actively engaged in the work. The theory which motivated the Legislature was that each party whose active participation in the

work was such that he could be said "to be in charge" should be held responsible for the effectuation of the minimum safety standards included in the Act. The question as to whether an owner would be deemed to be in charge of the construction in addition to the contractor would be for the jury to determine under proper instructions. Gannon v. C. M. St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785. The cases beginning with Gannon have laid down the test as to owner liability under the Structural Work Act as depending upon whether there was an evidentiary basis for the finding that the owner was a person "having charge of the work" within the meaning of the Act. And as was said in Gannon on p 321 ". . . wilful violations means *knowing violations,* and in the nature of things they can be perpetrated only by persons directly connected with the operations, and not by virtue of mere ownership of the premises. The inclusion of this phrase in the Act, therefore, further evidenced a legislative intention to impose the duty of compliance upon *those* having charge of the work." (Emphasis mine.)

Counsel for Edison cite no cases approving the peremptory instruction here given. The only portion of the instruction taken from the Structural Work Act is the phrase "charge of." I repeat, the statute does not provide that Edison be limited in its responsibility to the situation in which it might be "retaining control and supervision of such work being performed by Paschen Contractors, Inc." I am also of the opinion that the quashing of the subpoena duces tecum served upon the defendants, Sargent and Lundy, was in error.

I would reverse the judgment in favor of Commonwealth Edison and remand the cause for a new trial.