2 Ill. App.3d 874 (1971)
275 N.E.2d 920
BETTY JANE PLOENSE, Plaintiff-Appellee,
v.
ILLINOIS POWER COMPANY, Defendant-Appellant.
No. 11318.
Illinois Appellate Court  Fourth District.
November 23, 1971.
Rehearing denied December 21, 1971.
*875 *876 Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington, (William R. Brandt and William C. Wetzel, of counsel,) for appellant.
Costigan & Wollrab, of Bloomington, for appellee.
Judgment affirmed.
Mr. JUSTICE CRAVEN delivered the opinion of the court:
This action was to recover damages for wrongful death of Gerald Harvey Ploense occasioned by alleged negligence of defendant, Illinois Power Company, in maintenance of its electrical distribution lines.
A jury returned a verdict for plaintiff for $40,000 and a judgment was entered thereon in the amount of $30,000, the cause of action having accrued prior to the removal of the statutory limit of such actions.
The suit arises out of work being done by plaintiff's decedent, Gerald Harvey Ploense, in connection with a sign which had been erected by his employer, John Warren Anderson, on the Sinorak property at the intersection of Main Street and Route 66 on the south edge of Bloomington, Illinois. This sign advertised the restaurant on the Sinorak property which abutted South Main Street with an entrance and exit road running back to a large parking lot, restaurant and drive-in movie facility. The property had a number of wires of Illinois Power Company along its south boundary and above the sign. On the date of the accident, while working on some changes to be made in the sign, plaintiff's decedent came in contact with a wire of defendant, was electrocuted, and died.
Defendant assigns numerous grounds for error. It contends that the plaintiff failed to prove the essential elements of her case, failed to prove any proximate cause of an alleged negligent act of defendant as alleged, that plaintiff's decedent was guilty of contributory negligence as a matter of law, that the trial court erred in rulings on objections to evidence, that the jury was not properly instructed, that the verdict was contrary to the clear preponderance or manifest weight of the evidence and to law, and that the court erred in not instructing the jury for the defendant at the close of all the evidence, and in failing to grant defendant's post-trial motion.
The evidence was that John Warren Anderson, employer of Gerald Harvey Ploense, in February of 1963 called Illinois Power Company, informing its engineer, Clarence Alburtis, that he intended to erect a sign on the Sinorak property, and asking what clearance from defendant's wires would be necessary. The engineer told him that eight feet was required. Anderson stated that he was planning a taller sign and that Illinois Power Company would either have to relocate its lines to allow him to put in a taller sign or he would design a lower sign. He indicated that he either would redesign the sign so that it would have adequate clearance or he would contact Illinois Power Company to make adjustments *877 to its lines. Anderson did not call the company again until after plaintiff's decedent's death.
Some time after Anderson's conversation with Alburtis, Anderson and his employee, Robert Hohnstreiter, went to the Sinorak site and dropped a tape measure from what appeared to be the level of the lowest wires down to the driveway surface of the entrance drive to the property. Anderson testified this measurement was 38 feet and Hohnstreiter testified it was 35 feet from the lowest wire level to the driveway.
The sign was constructed over a two-month period by Anderson and erected on the premises over a two-week period. Both Ploense and Hohnstreiter worked on erection of the sign during this two-week period. The evidence showed that during this period the wires of defendant were above the sign, open and visible, and that the sign was designed to avoid any necessity for the workmen to come within ten feet horizontally of the wires even if working on top of the sign.
The sign was forty feet in length, and as erected extended in a north-south direction. As originally constructed it contained the word "Smorgasbord," with the word "Lunch" on top and to its south end, and the word "Dinner" centered beneath the word "Smorgasbord." It was a back-to-back sign, reading the same on both sides. It had been constructed in a north section and a south section. The sections were bolted together, being 30 inches apart, back to back, one side facing easterly and one westerly. Only some structural steel members were in between the faces, tieing them together, with a small electrical transformer that operated the neon sign bolted to the structural steel. The smorgasbord portion of the sign was designed to be 30 foot tall. Four wires of defendant ran in an east-west direction, located above and toward the north end of the sign. These wires carried 7200 volts of electricity and were not insulated. Anderson testified that at the time the sign was installed in July and August 1963, the wires were at least 10 feet above the sign and that he was able to stand erect on the sign and walk under the wires.
On the day of the occurrence, which was one or two months after the last work had been done on erection of the sign, Ploense and Hohnstreiter were engaged in moving some lettering on the sign from one portion of the sign to another. The owner of the premises had decided to have put up on the sign the name "Sinorak." This required moving the word "Dinner" to the right and the word "Lunch" from the top so as to position it to the left and beneath the word "Smorgasbord". The word "Lunch" was being placed to the left or south to stay away from the wires. Ploense did the drilling and Hohnstreiter put the bolts in to hold the sign. Ploense then tightened the bolts.
As the last part of the operation, Hohnstreiter was using an acetylene *878 torch to cut clips off of the poles on top of the sign so as to permit slipping the word "Sinorak" over them. Ploense and Hohnstreiter had worked on the job all day. Both Ploense and Hohnstreiter were up on the sign when about completed at 2:00 or 3:00 P.M., Ploense was tightening up the bolts in between the sign. Hohnstreiter testified that he went down between the signs on an aluminum ladder which extended from the ground up in between the two faces of the sign, and climbed up a wooden ladder placed against the sign in order to cut the clips off of the poles. This job took about 30 minutes, during which time he did not see Ploense as Ploense was working on the lunch sign below him and about ten feet below the top of the sign. Hohnstreiter testified that as he was completing the cutting, he heard an arcing sound and turned around and saw Ploense at the far north end on top of the "Smorgasbord" sign with an electric wire in his hand. Hohnstreiter got the torch out of his hands, removed his goggles and tried to work towards Ploense, walking between the sign faces on the small angle irons that were 30 inches apart. Ploense had both arms over a wire, behind his back, and rode the wire down to the top of the sign. When Hohnstreiter was about six feet from Ploense, the wire burned in two on top of the sign and Ploense dropped through. He later was pronounced dead by the coroner.
Prior to the accident there were four wires. The third wire from the north was broken and fell to the ground. It was replaced immediately after the accident by the Illinois Power Company. The day after the occurrence, Alburtis, defendant's engineer, measured the wires. He testified that the measurements then made located the northerly-most wire, a hot wire, as three foot seven inches above the top of the letter "S" on the sign; the next wire, being the neutral wire, as five feet nine inches above the sign. The third wire he testified was a hot wire and the one which was replaced after the accident, and it was five feet eleven inches above the sign. The fourth wire was furthest to the south and was four feet two inches off the top of the sign. He further testified that he did not know how high or low these wires were on the date of the occurrence.
Alburtis testified that at all times from the date of installation to the date of the occurrence the height and span of the wires met or exceeded the General Order of the Commerce Commission, which required a minimum height for the line above ground of approximately 24 feet 4 inches. He further testified that the General Order of the Commerce Commission referred to systematic inspection of power lines; that this customarily was done by all of their personnel in going about to read meters or in driving about. He knew of no report having been made prior to the accident as to proximity of the wires.
*879 Over objection of the defendant, Anderson was permitted to testify by an order of proof that he had worked with Ploense with electricity during the three years he had been employed and had observed him around electrical energy and that his opinion was that Ploense had careful habits conducting himself in the presence of electrical energy. Hohnstreiter also was permitted, over objection, to testify that Ploense had careful habits around electricity.
The coroner of McLean County testified that Ploense had no burn marks on his hands. He identified plaintiff's exhibit 7, a photograph he had taken of Ploense's body showing burn marks on his back. Defendant objected to the admission of this exhibit as being prejudicial and inflammatory and offered to stipulate to a description of what the picture showed. The court overruled the objection and admitted the photograph.
Much of the testimony in this case and a large portion of the respective briefs before this court deal with the design and construction of the sign by Anderson and measurements of the sign in relation to the wires of defendant company at the time of the original installation of the sign and after the accident. This is an effort to reargue the facts before this court and to have this court pass upon those facts which already have been heard and determined by the jury and the trial court. It is not our function on appeal to reweigh the facts and substitute our judgment for that of the trial court and jury.
 1, 2 As we review this case, we can but conclude that it presented factual questions for the jury. Whether defendant power company was under a duty to insulate its wires at the location of the accident was a factual question considering the conditions and circumstances, including whether it was reasonably foreseeable that persons might reasonably come into proximity of the wires. From the nature of the electrical business and highly charged wires, an electric company owes a duty to see that its wires are properly placed and properly insulated where the conditions and circumstances indicate that persons may come into reasonable proximity to the wires. Merlo v. Public Service Co. (1942), 381 Ill. 300, 45 N.E.2d 665; Austin v. Public Service Company (1921), 299 Ill. 112, 132 N.E. 458.
 3 Where, as here, defendant power company's design engineer was apprised of the proposed erection of a sign in proximity with its high voltage wires, it may well be held negligent in failing to make any inspection of the location of its wires and their height at that site. The evidence here showed no action on part of defendant to inspect the height of these wires after being notified of the proposed construction or in fact any affirmative inspection ever having been made of them subsequent to 1962 when the voltage in them was increased. Under these circumstances, *880 there was sufficient evidence to permit the jury to pass upon the question of defendant's negligence.
 4 The only evidence of the height of these wires in 1965 when the sign was constructed was the testimony of plaintiff's witnesses, Anderson and Hohnstreiter. They walked erect on top of the sign on numerous occasions under defendant's wires. They testified that at that time these wires were about 8 to 10 feet above the sign. So far as any testimony appears, this was the condition of the wires when Ploense observed them and worked on the sign during and upon completion of its construction. Under this state of the evidence, it cannot be said that Ploense was guilty of contributory negligence as a matter of law in working under these wires on the day of the accident.
 5 There is no direct evidence as to the height of these wires above the sign on the date of the accident. According to the measurements made by defendant on the day after the accident the two hot wires remaining up were 3 feet 7 inches and 4 feet 2 inches above the sign. Plaintiff's Exhibit 7 showed burn marks in the center of Ploense's back. This exhibit, in view of the evidence that he was 5 feet 11 inches tall, would confirm that the wires were considerably closer to the sign than 8 to 10 feet at the time of the accident. Whether the wires had sagged or lowered since original construction of the sign was a jury question. At all times these wires were under the exclusive control of the defendant. This testimony presented a question to the jury of defendant's negligence in connection with its duties of inspection and maintenance of the high voltage wires.
 6 Defendant contends that admission of habit testimony of due care of plaintiff's decedent was error because his co-employee, Hohnstreiter, was an eyewitness. The trial court heard testimony of Hohnstreiter before admitting the habit testimony. Hohnstreiter testified that he had not observed Ploense for 30 minutes prior to the time that he heard an arcing noise, looked and observed Ploense entangled in the wires. Under this testimony, Hohnstreiter did not see the actions and conduct of Ploense leading up to and immediately involved in the occurrence. Hence, he was not an eyewitness to the occurrence. The trial court did not err in admitting testimony of careful habits of decedent. Plank v. Holman, 46 Ill.2d 465.
 7 Defendant contends that the admission in evidence of plaintiff's exhibit 7, a color photo of the back of plaintiff's decedent, was reversible error because of its dramatic effect and emotional appeal. While this exhibit no doubt tended to appeal to emotion, it was an accurate and relevant exhibit with probative value tending to establish the important issue as to the height of the wires with which he came into contact. Under such circumstances, its admission was within the discretion of the trial *881 court. Darling v. Charleston Memorial Hospital (1st Dist. 1964), 50 Ill. App.2d 253, 200 N.E.2d 149.
 8 Defendant also contends various errors in the giving or refusing of instructions and rulings as to applicability of the Health and Safety Rules of the Illinois Industrial Commission. The instruction tendered by defendant setting forth Health and Safety Rules of the Illinois Industrial Commission was not applicable to this case which involved no claim between an employer and an employee. (Jones v. S.S. & E. Corporation (1st Dist. 1969), 112 Ill. App.2d 79, 250 N.E.2d 829.) Furthermore, certain words used in those rules with respect to duty of workmen to crawl out on thrustouts or projecting beams to wear lifelines and safety belts have no application to type of case here. Such instruction properly was refused.
 9 Defendant objected to plaintiff's instruction 5 as not being complete in that it failed to contain language set forth in the supplement to Illinois Pattern Jury Instruction 12.05 but contained only the language in the original section 12.05. This was an instruction to the effect that if defendant was negligent and its negligence was the proximate cause of decedent's death, it is not a defense that something else may also have been a cause of death. The supplement provides for further instruction where the sole proximate cause was something other than defendant's conduct. Under the testimony in this case, there was no evidence that the sole proximate cause of death was something other than the conduct of defendant. It, therefore, was not error to give plaintiff's instruction 5 as submitted.
Considering the instructions as a series, the jury was properly instructed.
 10 Having carefully reviewed the errors complained of, we find that the case was submitted to the jury free of reversible or prejudicial errors and that the evidence supports the verdict of the jury and the judgment entered.
Judgment affirmed.
SMITH, P.J., concurs.
Mr. JUSTICE TRAPP, dissenting:
Upon the facts of record this case is controlled by Witzig v. Illinois Power Company, 114 Ill. App.2d 139, 251 N.E.2d 902, May v. Illinois Power Company, 342 Ill. App. 370, 96 N.E.2d 631 and Withey v. Illinois Power Company, 32 Ill. App.2d 163, 177 N.E.2d 254. In each of these cases, the electric lines were clearly apparent or known to the injured *882 party and it was determined that there was contributory negligence as a matter of law.
This work was undertaken and carried on under an existing power transmission line. The decedent was a man of some years of experience in electrical work and in working in the vicinity of high voltage lines. It was apparent to the men on the job that the lines were uninsulated and were known to be high voltage. It was clear that the employer and the deceased employee were aware of the proximity of the lines to the sign being constructed, had observed them on many occasions, and initially had exercised particular care to avoid such lines.
Consideration of plats and drawings offered in behalf of plaintiff belie the argued contention that the decedent could expect to work within a clearance of 8 or 10 feet above the sign being constructed. Such drawings indicate that the principal portion of the sign was almost 31 feet high and that a smaller portion was almost 34 feet high. The decedent is described as being 5 feet 11 inches tall. Plaintiff's witness Hohnstreiter best recalled that during the winter he assisted in measuring the height of the transmission line and at that time the wires were 35 feet above the ground. Anderson testified that on such occasion the wire was measured at 38 feet above ground level. The record shows that the fact that the lines would contract with cold and expand in heat causing the wires to sag was known to the men on the job.
Upon the physical facts observed or readily observable by one in the exercise of ordinary reasonable care, it seems manifest that the decedent failed to exercise caution for his own safety as would an ordinarily prudent person under the circumstances and was in fact guilty of contributory negligence as a matter of law. Upon the stated authorities, I must dissent from this opinion.