FREDERICK CLEMENTS, Plaintiff-Appellant, *v.* SCHLESS CONSTRUCTION COMPANY, INC., Defendant-Appellee.

(No. 71-128;

Second District—September 25, 1972.

*Rehearing denied December 19, 1972.*

James E. Dooley, of Chicago, for appellant.

Peregrine, Stime & Henninger, of Wheaton, for appellee.

Mr. JUSTICE PARKER delivered the opinion of the court:

This action is brought under the Structural Work Act (Ill. Rev. Stat. 1959, ch. 48, sec. 60, *et seq.*), by Frederick Clements, Plaintiff, against The Schless Construction Company, Inc., a corporation, Defendant, to recover damages for personal injuries suffered from a fall which occurred while he was painting the exterior window sashes of a school building in Westmont, Illinois.

A Jury returned a verdict in favor of the Defendant. After denial of post-trial motions, Plaintiff appealed and this Court reversed the judgment and remanded the case for a new trial. Thereafter, this Court filed a Supplemental Opinion upon its denial of Defendant-Appellee's Petition for re-hearing. (*Clements v. Schless Construction Co.* (1967), 91 Ill.App.2d 19; 234 N.E.2d 578.) The second trial again resulted in a Jury verdict in favor of the Defendant, and the Plaintiff now prosecutes this second appeal.

The Defendant, as general contractor, had an agreement with School District No. 57, DuPage County, to make certain alterations to a school building in Westmont, Illinois. Defendant was to do all carpentry and brick-laying work and, to that end, had scaffolding and equipment at the job-site. However, all of Defendant's equipment had been removed prior to the date of Plaintiff's injuries.

Plaintiff was an employee of John F. Hirsch, d/b/a John H. Mosack Company, hereinafter referred to as Hirsch, a painting sub-contractor on the job. Hirsch provided all of the equipment for his employees.

On the day of the occurrence, Plaintiff and another Hirsch employee, Lawrence A. Voight, were the only workers on the job-site. The equipment present and used by these men belonged to Hirsch. Before lunch, both parties tested the equipment by jerking on the stringer (plank) after it had been placed on the ladder jacks. They found it to be "all right". The equipment was erected for the purpose of painting the sash on a bank of windows.

Plaintiff went onto the scaffold while Voight went to another part of the building. Plaintiff was seen standing on the platform and, moments later, was found lying on the ground. The stringer was found right-side up on the ground at the foot of the ladders—a couple of feet away and

to the North end of the ladders. One ladder jack was found on the ground, below the North ladder, and the other was on the South ladder, out of place. Plaintiff suffered head and body injuries.

Defendant's superintendent, Arthur Prokaski, who coordinated all of the work, including that of the subcontractors, was on the job four days per week. There was no written contract between Defendant and Hirsch. At one point, Defendant sent Hirsch a change order, which Hirsch complied with.

Plaintiff first contends that the Trial Court erred by not following the directions of this Court, set forth in the Supplemental Opinion on the first appeal. (*Clements, supra*). Both parties agree that the adjudications on that appeal are the controlling law of this case. Specifically, Plaintiff complains that the Court improperly refused, at the close of all the evidence, to instruct the Jury to find for the Plaintiff and to submit only the question of damages to the Jury. In support of his position, Plaintiff argues that our prior decision in this case required a finding that, as a matter of law, the Defendant was one of the persons having charge of the work in question within the meaning of the Structural Work Act, and, further, that, as a matter of law, the Defendant was guilty of a violation of that Act.

On the first trial of this case, the Jury received an instruction tendered by Defendant, which required the Plaintiff to prove, among other things, "that the Defendant was in charge of the work being performed by John F. Hirsch, d/b/a John H. Mosack Company." This instruction was held to be improper in that it did not permit a finding by the Jury that both Hirsch and the Defendant may have been "in charge of the work". This Court did not hold that such a finding should, as a matter of law, be made on the facts presented, but merely declared it to be error to preclude such a finding by the Jury. In compliance with this directive of this Court, this instruction was not given at the re-trial of the cause.

Notwithstanding the foregoing, Plaintiff argues that this question should not have been submitted to the Jury. In essence, Plaintiff contends that the Defendant was a person "having charge of the work" because its superintendent, Prokaski, received instructions from the architect and then gave directions to all sub-contractors, including Plaintiff's employer, Hirsch; further, that the Defendant manifested actual control of Hirsch by issuing a change order to Hirsch, who complied. In support of his position, Plaintiff cites three cases, namely, *Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316; *Miller v. DeWitt*, 37 Ill.2d 273; and *Pantaleo v. Gamm*, 106 Ill.App.2d 116.

The *Larson* case was an action for injuries sustained in a scaffold fall brought by an employee of Paschen Construction Company against Com-

monwealth Edison Company, which was both owner and general contractor. Briefly, the facts showed that the Plaintiff sustained injuries when a scaffold upon which he was working broke and fell. The owner, Commonwealth Edison Company, had entered into 70 or 80 contracts with numerous sub-contractors, each of whom was to perform specific work on the over-all project. Plaintiff's employer, Paschen, had one such contract, which provided that the work be done under Edison's general supervision and to its satisfaction, and that Paschen was obligated to perform additional work as directed by Edison.

Edison had six employees on the job-site at all times to check compliance with the terms and specifications of the contract. Representatives of Edison's Safety Department also visited the site periodically, to make suggestions to contractors and their employees. Edison presided over weekly or biweekly meetings, to coordinate the sequence of work. These meetings were attended by all contractors. The Trial Court instructed the Jury as follows:

> "The Court instructs the Jury that the Plaintiff is not entitled to recover damages under the provisions of the Structural Work Act, unless he has proven by a preponderance, or greater weight of the evidence, that the Defendant, Commonwealth Edison Company, had charge of the work by *retaining control and supervision of such work being performed by Paschen Contractors, Inc.*"

(Emphasis added) *Larson*, at pp. 320-321.

In its decision, the Supreme Court held this instruction to be erroneous in that the emphasized language placed a greater burden upon Plaintiff than is required by law. The Court noted that the term "having charge of" is a generic term of broad import and, while it may include supervision and control, it is not confined to it. (*Larson*, at p. 321.) Of greater significance, however, is the fact that the Court remanded the case for a new trial, and, despite all the evidence of participation by Edison, did not direct that Edison should be found to have been "in charge of the work", as a matter of law. Instead, the Court stated that whether the particular activities in a specific case were such that an owner could be deemed to "have been in charge" was a question of fact for the Jury to determine. *Larson*, p. 321.

Again, in *Miller v. DeWitt*, 37 Ill.2d 273, and *Pantaleo v. Gamm*, 106 Ill.App.2d 116, the Courts held that the issue of whether a specific individual or corporation is a person "having charge of the work" is a factual question to be left to the Jury's determination.

■■ In an earlier decision, *Gannon v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1961), 175 N.E.2d 785, the Court held that the language of the Structural Work Act is not to be construed as imposing absolute

liability upon any of the named persons. In that case, it was held that the liability of an owner is not absolute and nondelegable. Finally, in the case of *Kobus v. The Formfit Co.* (1966), 35 Ill.2d 533, 538, the Court reaffirmed its position that this issue raises a question of fact which must be decided by the Jury. Acceptance of Plaintiff's theory in this case would, in essence, require holding that the liability of a general contractor is absolute and nondelegable. We do not believe that this principle can be supported by any authority under the Structural Work Act and, in fact, Plaintiff has cited no such authority. The question of whether the Defendant was a person "having charge of the work" was properly submitted to the Jury.

■■ Plaintiff next contends that it was prejudicial error to refuse to instruct the Jury that, as a matter of law, Defendant had violated the Structural Work Act. In support of that position, Plaintiff argues that a violation of the Rules of the Industrial Commission, enacted under the Health & Safety Act, is a violation of the Structural Work Act. Plaintiff urges that this Court so held on the first appeal of this matter, when it made the following statement:

> "The Structural Work Act, as well as the Health & Safety Rules of the Industrial Commission, control such matters * * *."
> *Clements v. Schless Contruction Company, Inc.,* 91 Ill.App.2d 19, 26.

At the first trial of this case, over Plaintiff's objection, the Court permitted the witness, Voight, to testify relative to certain customs and practices in DuPage County, with reference to the method of erecting scaffolding and ladders. By the above-quoted language, this Court merely pointed out that a determination of what is a safe, suitable and proper scaffold should be made by reference to the Rules and Regulations of the Industrial Commission and the Act itself, rather than to customs and practices of the community.

The Jury was instructed that they could consider the Rules of the Industrial Commission, together with all the other facts and circumstances in evidence, to determine whether the ladders, scaffolding or stays were safe, suitable and proper. Only two cases dealing with this question have been brought to the attention of this Court. The first (*Jones v. Tometto S.S. & E. Corp.* (1969, 1st Dist., 4th Div.), 112 Ill.App. 2d 79), was an action brought by a subcontractor's employee against a general contractor. The Trial Court, there, instructed the Jury:

> "If you decide that a party violated the Health and Safety Act on the occasion in question, then you may consider that fact, together with all the other facts and circumstances in evidence, in

determining whether or not a party wilfully violated the provisions of the Structural Work Act." *Jones*, at p. 95.

Noting the exact language of the Health and Safety Act, the Appellate Court reversed, holding that the Act is only meant to apply to "employers" and thus would be irrelevant in a dispute between a general contractor and a sub-contractor's employee.

In *Avery v. Moews Seed Corn Co.* (1971), 131 Ill.App.2d 842, 268 N.E.2d 561, cited by Defendant, the Court held that the rules promulgated by the Industrial Commission under the Health and Safety Act could be received in evidence in an action other than one between employer and employee on the issue of the standard of care required of the Defendant. Distinguishing that case from *Jones, supra,* the Court pointed out the limited purpose for which those rules were admitted, and noted that the Jury was instructed as to that purpose. *Avery,* at p. 848.

■■ We agree with the holding in *Avery* that these rules, as evidence, serve a useful function in establishing the proper standard of care to be exercised by the Defendant. Following the principles set forth in *Darling v. Charleston Community Hospital,* 33 Ill.2d 326; 211 N.E.2d 253, we hold that a proper standard of conduct may be established by these rules, but they do not conclusively establish and determine the standard of care, and the Jury should not be instructed that they do. The Jury should be instructed as to the limited purpose for which these rules are admitted.

■■ Plaintiff next contends that it was error for the Trial Court to refuse to instruct the Jury in substance that the Defendant violated the Act in question, in that: "it permitted a stringer approximately 14 inches or wider, supported by ladder jacks, to be used in doing work at a level in excess of 20 feet without a guard rail thereon." An instruction in this language would have been improper under the facts of this case, and the Trial Court correctly refused to give it. There was no evidence which required a finding that the failure to provide a guard rail constituted a violation of the Act. The Act does provide that scaffolds or staging which are "swung or suspended from an overhead support more than twenty (20) feet from the ground or floor shall have, where practicable, a safety rail properly bolted, secured and bound, etc." (Chap. 48, Ill. Rev. Stat., Sec. 60.) In the instant case, however, we are not dealing with a suspended apparatus, and that provision of the Act is, therefore, inapplicable.

■■ Plaintiff next assigns error on the admission of certain opinion testimony given by Defendant's superintendent, Prokaski. This witness,

in answer to a hypothetical question propounded by Defendant's counsel regarding the competent producing cause of Plaintiff's fall, made the following response:

"Well, in my opinion, the man working on the scaffold would have had to fall himself for some reason, which I know not, and in falling—and in this falling action of himself, he would have to grab the stage as such, and in his falling, pull it off; and that action would release the tops of the ladder jacks, causing him to fall."

Plaintiff maintains this response contained nothing but conjecture and speculation of the witness and should have been stricken. The very same comment can be made of Plaintiff's witness, Botica, who was permitted, over objection, to testify to the same hypothetical question as to the competent producing cause of Plaintiff's fall. No one saw the Plaintiff fall and the opinions of both so-called experts were, to a considerable degree, based upon conjecture. Consequently, we believe that the error, if any, complained of by Plaintiff was not of such a serious nature as to require reversal. Nor do we agree that the Trial Court, by its rulings on the responses to these hypothetical questions and answers, necessarily and improperly injected an issue of negligence into the case.

██ The next source of error cited by the Plaintiff is the closing argument of defense counsel. We do not consider those portions of the argument to which no objection was made at the trial, for we find that none of them were so seriously prejudicial as to require reversal. *Illinois Build-Authority v. Dembinsky* (1968), 101 Ill.App.2d 59; 242 N.E.2d 67.

██ During his argument, Defendant's attorney did comment upon the fact that the same equipment was still being used by the Company at the time of the trial. Timely objection was made to this statement of counsel. At the trial, Robert J. Ryan, one of Hirsch's employees, testified as follows:

"As far as I know, all of this equipment is being used at the present time, including the ladder jacks."

This testimony was received without objection. While the continued use of the equipment may have been immaterial, it was in the case without objection, and we can not agree that counsel's comment necessarily resulted in such substantial prejudice to Plaintiff that reversal is required.

██ Plaintiff also claims prejudice because of certain remarks made by Defendant's attorney regarding the Plaintiff's failure to call a certain medical witness. The Jury was not instructed nor was it directly argued that a failure to produce this witness raised an inference that his testimony would be adverse to the Plaintiff. In the context of the entire proceedings, we feel that the Trial Judge was in the best position to determine whether these remarks were within the bounds of fair comment

and can not agree that serious prejudice to the Plaintiff resulted therefrom. (See *Chicago City Ry. Co. v. Creech* (1904), 207 Ill. 400, 403; 69 N.E. 919.) Further, the matter really went to the issue of damages and not liability.

■■ Again Plaintiff objects to comments by defense counsel about the testimony of Plaintiff himself. These comments, like the proceeding ones, could only have affected the issue of damages. Inasmuch as the Jury found for the Defendant on the issue of liability, we fail to see how these comments could seriously have affected Plaintiff.

■■ Finally, Plaintiff contends that the Jury's verdict is against the manifest weight of the evidence and should be set aside. We have carefully examined the entire record in this case, and can not agree that there was no evidence to support the Jury's verdict. The verdict was not clearly against the manifest weight of the evidence; and, in our opinion, there is adequate evidence in the record to support it.

We affirm the decision of the Trial Court.

Judgment affirmed.

GUILD, P. J., and T. MORAN, J., concur.