WILLARD SCRIMAGER, Plaintiff-Appellant, Cross-Appellee, v. CABOT COR-
PORATION, Defendant-Appellee, Cross-Appellant.

(No. 12080;

Fourth District—October 24, 1974.

CRAVEN, J., dissenting.

Hatch, Corazza, Baker & Jensen and Hagin Harper, both of Champaign (Harold A. Baker, of counsel), for appellant.

Jack E. Horsley and Richard F. Record, Jr., both of Craig & Craig, of Mattoon, for appellee.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Plaintiff sued to recover for personal injuries alleging violation of the Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, pars. 60-69). Upon a bench trial the court awarded damages in the sum of $27,415.03. Plaintiff appeals urging that such award is inadequate as a matter of law.

Defendant cross-appeals urging that the evidence does not support the finding that the defendant was "in charge of" the work as provided in such Act, and that the trial court committed prejudicial error by accepting into evidence rules prepared by the Industrial Commission of the State of Illinois upon the authority of the Health and Safety Act, Ill. Rev. Stat. 1967, ch. 48, par. 137.3.

Plaintiff was a member of a painters union, employed by the Hartman-Walsh Paint Company to paint the roof of the defendant's warehouse. He fell from the roof suffering injuries. At such time the building had no permanent railings or gutters on the roof and no safety devices of any type were being used.

Defendant had a written contract with Hartman. The trial court particularly noted the many provisions of the contract with regard to the "right to control" the work, which included and provided for the right of defendant to cause the discharge of any incompetent employee; to require compliance by Hartman with instructions for safety given by the defendant's engineer; that the right to terminate the work when weather did not permit satisfactory quality; the right of defendant to determine whether or not there should be night work and the right of defendant to suspend work on the job. In a somewhat contradictory vein, the contract provided:

> "It is stipulated and agreed that [Hartman-Walsh] is an independent contractor and has full power and authority to select the means, methods and manner of performing the work herein contracted for, and is responsible to [defendant] only for the results

herein contracted for, and that [defendant] shall not have the power or authority to direct, supervise or control [Hartman-Walsh] in the means, manner or method of the performance of the work; but that said [Hartman-Walsh] shall be responsible to [defendant] for the faithful completion of the work herein contracted."

It appears from the testimony that defendant did not, in fact, exercise any authority or control under the contract and did not have any dealings with the painters performing the job. Essentially, it seems that no authority or control was actually exercised in behalf of the defendant,

■■ Liability under section 9 of the Scaffold Act (Ill. Rev. Stat. 1973, ch. 48, par. 69) follows from "having charge of the * * * painting of any building * * *," and not from mere ownership of the building upon which the work is being performed. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 22 Ill.2d 305, 175 N.E.2d 785.) Although the term "having charge of" has been said to be one of common usage and understanding, not requiring further definition (*Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, 211 N.E.2d 247), a few specific principles concerning that term have developed. The retention of the right to control the work is sufficient to establish a duty under the Act. (*Larson, supra; Buehler v. Toynan Construction Co.*, 52 Ill.2d 214, 287 N.E.2d 691.) One upon whom the statute imposes duty cannot be freed from that duty by failure to exercise the control he has retained. (*Larson, supra; (Louis v. Barenfanger*, 39 Ill.2d 445, 236 N.E.2d 724, *cert. denied*, 393 U.S. 935.) One possessing the right to stop the work if it is being done in a dangerous manner is a person "having charge" within the meaning of the Act. (*Miller v. DeWitt-Amdal & Associates*, 37 Ill.2d 273, 226 N.E.2d 630.) Whether a particular person has charge of the work is a question to be resolved by the trier of fact. (*Gannon, supra.*) The jury's determination of "having charge" will not be disturbed upon review if it is not contrary to the manifest weight of the evidence. (*Crabb v. Robert R. Anderson Co.*, 87 Ill.App.2d 291, 232 N.E.2d 44.) The same standard of review applies to a bench trial, and the trial court's factual determination will not be disturbed unless contrary to the manifest weight of the evidence. (*Hall v. Burnett*, 5 Ill.App.3d 33, 282 N.E.2d 509.) Here, Hartman-Walsh had by contract agreed to require its painters to obey defendant's engineer's safety regulations, and defendant retained the right to terminate the contract if Hartman were to willfully violate its terms, and to stop the work if it appeared to be in defendant's best interests. The trial court could reasonably find that defendant had the right to stop the work if it were being done in an unsafe manner. (*Miller v. DeWitt, supra.*) In *Weber v. Northern Illinois Gas Company*, 10 Ill.App.3d 625,

295 N.E.2d 41, it was concluded that the owner cannot by contract assume control of the work, but by the same contract exclude responsibility for safety.

Defendant asserts that it was error to admit into evidence certain rules of the Industrial Commission of the State of Illinois prepared under the authority of the Health and Safety Act. By its terms, such rules are applicable only between an employer and his employees. (*Jones v. S. S. & E. Corp.*, 112 Ill.App.2d 79, 250 N.E.2d 829; *Tenenbaum v. City of Chicago*, 11 Ill.App.3d 987, 297 N.E.2d 716.) Among such rules, one provided for a standard scaffold or catch platform for work upon all roofs of a quarter pitch or more.

In *Louis v. Barenfanger*, 39 Ill.2d 445, 236 N.E.2d 724, it was held that the application of the Structural Work Act cannot be avoided by a failure to provide a scaffold and that such failure to so provide a scaffold-like appliance may be a violation of the Act.

In *Parizon v. Granite City Steel Company*, 71 Ill.App.2d 53, 218 N.E.2d 27, it was noted that the Structural Work Act does not state when or under what circumstances there is a duty to provide a scaffold. See also the dissenting opinion in *Barenfanger.*

■■ We conclude that the authorities establish the admissibility into evidence of such rules. In *Larson v. Commonwealth Edison Co.*, 48 Ill.App.2d 349, 353-54, 199 N.E.2d 265, an action under the Structural Work Act, the court noted that the use of the type of scaffold "was regulated by rules promulgated by the Industrial Commission of the State of Illinois pursuant to the mandate of the Health and Safety Act." The supreme court (33 Ill.2d 316, 319, 211 N.E.2d 247) said:

> "[I]t is undisputed that the scaffold did not comply with rules *promulgated* by the Industrial Commission to *implement the statute.*" (Emphasis supplied.)

In *Clements v. Schless Construction Co.*, 91 Ill.App.2d 19, 234 N.E.2d 578, the complaint charged a violation of the Structural Work Act in that the acts of the defendant were in violation of the safety rules issued pursuant to the Health and Safety Act. It was held that:

> "The Structural Work Act, as well as the Health and Safety Rules of the Industrial Commission, control such matters." (91 Ill.App.2d 19, 26.)

After a new trial, plaintiff appealed (8 Ill.App.3d 291, 290 N.E.2d 21) from a verdict for defendant contending that it was error to refuse to instruct that a violation of such rules was a violation of the Act. In affirming the trial court's refusal to so instruct, the opinion said:

> "We agree with the holding in *Avery* that these rules, as evidence, serve a useful function in establishing the proper standard

of care to be exercised by the Defendant. Following the principles set forth in *Darling v. Charleston Community Hospital,* 33 Ill.2d 326, 211 N.E.2d 253, we hold that a proper standard of conduct may be established by these rules, but they do not conclusively establish and determine the standard of care, and the Jury should not be instructed that they do. The Jury should be instructed as to the limited purpose for which these rules are admitted." 8 Ill.App.3d 291, 297.

In *Avery v. Moews Seed Corn Co.,* 131 Ill.App.2d 842, 268 N.E.2d 561, the rules were held admissible into evidence in an action for personal injuries for the purpose of establishing a standard of care, although the plaintiff was not an employee of the defendant. In *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.,* 49 Ill.2d 118, 273 N.E.2d 809, standards of the Department of Public Works and Buildings for grade-crossing protection were held admissible in an action for wrongful death, although such standards were not adopted by the Illinois Commerce Commission and were not binding upon the railroad. The court quoted its language from *Darling v. Charleston Community Memorial Hospital,* 33 Ill.2d 326, 211 N.E.2d 253, in the language:

> " 'In the present case the regulations, standards, and by-laws which the plaintiff introduced into evidence, performed much the same function as did evidence of custom. This evidence aided the jury in deciding what was feasible and what the defendant knew or should have known. It did not conclusively determine the standard of care and the jury was not instructed that it did.' " (49 Ill.2d 118, 125.)

The evidence here in question performed the same function and was properly admitted.

Defendant urges that the evidence was inadmissible by reason of the decision of this court in *Ploense v. Illinois Power Company,* 2 Ill.App.3d 874, 275 N.E.2d 920, and that the trial court was bound to follow such authority under the rule of *Hughes v. Medendorp,* 294 Ill.App. 424, as construed in *UMW Union Hospital v. UMW District No. 50,* 52 Ill.2d 496, 288 N.E.2d 455. As with the cases cited, *Ploense* simply held that it was error to instruct as to a duty arising under the rules of the Health and Safety Act. Such ruling is clearly distinguishable from evidence which is limited to showing a standard of care.

Plaintiff urges that the award of damages is inadequate as a matter of law. The sum of $2415.03 in the judgment covered medical expenses. Plaintiff was 38 years of age with a life expectancy of 34.5 years. He lost 6 months' work and his injuries are, to some extent, permanent. His testimony is that he is no longer able to work as a painter. He had, however,

continued to work as a truck driver and equipment operator. There is some testimony that plaintiff was rated as a combination steel and steeplejack painter. The wage scale of the latter employment at the time of trial was $8.38 per hour. It is argued that plaintiff's earnings should be determined upon the basis of working as a steeplejack. The record, however, does not show any actual employment as a steeplejack painter. It does show plaintiff apparently left a job erecting radio antennae to be a commercial steel painter. In argument, it seems to be assumed that plaintiff could work as a steeplejack until some 65 years of age, but there is no evidence to such effect.

Plaintiff's work, as a painter, is not shown to be any regular employment with a particular contractor but he was assigned from a union hall. At the time of the injury he had been on this job some 4 days. There is no evidence of an average annual income based upon employment as a painter or otherwise, and there is no evidence as to how many weeks during a year he was employed, or might expect to be employed in the admittedly seasonal work. As the trial court noted, there is no evidentiary basis for determining annual earnings.

■■ In order that this court can determine that a verdict is against the manifest weight of the evidence, the contents of the record must be such that an opposite conclusion is clearly evident. (*McInerney v. Hasbrook Construction Co.*, 16 Ill.App.3d 464, 306 N.E.2d 619.) By such rule, we cannot say that the verdict is inadequate as a matter of law.

The judgment is affirmed.

Affirmed.

SIMKINS, J., concurs.

Mr. JUSTICE CRAVEN dissenting:

The trial court awarded $25,000 for plaintiff's pain, suffering, and loss of past and future wages. Upon the evidence presented, I believe this amount is inadequate as a matter of law.

Plaintiff suffered a severe fracture of the right clavicle, a compression fracture of the seventh thoracic vertebra, possible herniated intervertebral disc, a large fracture of the right temporal portion of the skull, multiple rib fractures, and numerous cuts and contusions on his face, arms, and legs as a result of his fall. Limited movement of plaintiff's right arm as a result of thoracic outlet syndrome, inability to lift heavy objects due to back pain, and morning headaches are permanent manifestations of plaintiff's injuries.

As a consequence of his injuries, it was uncontradicted that plaintiff is unable to successfully continue his previous occupation of painter.

Before the accident, plaintiff held a journeyman's card as a combination steel and steeplejack painter. The record discloses that plaintiff was engaged in that profession when injured. This occupation had a total package wage rate of $8.83 per hour at the time of plaintiff's trial.

The best employment plaintiff has been able to obtain following his injuries was working as a winch operator at $5 per hour for his brother who owns a tower-erection company. The record indicates plaintiff's accident-related physical handicaps make continuation of this employment tenuous.

Although the evidentiary posture of this case as to damages is not ideal, the record does disclose that plaintiff earned only $3521.25 in the year 1971 as a result of 971 hours of employment. Realizing that painting is seasonal work and that no precise figure was given as to plaintiff's work as a painter before his injuries, if plaintiff had been employed as a steel and steeplejack painter for this number of hours in 1971, he would have earned $8573.93 at the then wages. The evidence disclosed plaintiff did not have steady work in the wintertime as a painter but did work continuously during summers before his injuries. It is upon this inability to precisely determine what plaintiff's income was before his accident that the majority sustains the trial court's verdict.

It is apparent that there is a substantial differential between what plaintiff earned before his injuries and what he earned afterwards. Projected over a 26-year work-life expectancy, it is obvious that the $25,000 awarded plaintiff is inadequate. It does not strain the concept of judicial notice to recognize the fact that the dollar's value has rapidly decreased and continues to do so. The true value of plaintiff's 1972 judgment for 1967 injuries, which contained an element for loss of future earnings, is greatly diminished when viewed in light of this inflation. The judgment awarded plaintiff cannot be anything more than a guess concerning plaintiff's loss of future earnings rather than a figure based upon reasonable mathematical certainty in the proof. A judgment in favor of a plaintiff can be reversed when it is obvious that the factfinder failed to take into consideration the proper elements of damage clearly proven and awarded him an inadequate amount. (*Wihr v. Bruno's Appliances Sales & Service, Inc.*, 29 Ill.App.2d 145, 172 N.E.2d 633.) The judgment should be reversed and the cause remanded for a new trial on the issue of damages only.